23 A.3d 989

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Vincent A. MOTO, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 2010.

Decided May 26, 2011.

96

Hugh J. Burns, Jr., Philadelphia, Michael Lee Erlich, Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

Jason Adam Snyderman, Blank Rome, LLP, Philadelphia, for V.A.M.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice McCAFFERY.

The Commonwealth appeals from the order of the Superior Court reversing the trial court's denial of the petition filed by Vincent A. Moto ("Appellee") to expunge his criminal record. Because we hold that the Superior Court erred in reversing the trial court, we now reverse the order of the Superior Court.

In 1987, a jury convicted Appellee of rape, involuntary deviate sexual intercourse, robbery, and criminal conspiracy, following which the court imposed a sentence of 12 to 24 years' imprisonment. These convictions and sentence arose from the following circumstances. Appellee was arrested and charged with the above offenses after the victim, L.Y., saw Appellee walking down the street and recognized him as one of two men who had sexually assaulted and robbed her several months before. At Appellee's trial, L.Y. testified that, while she had been walking home one evening in December 1985, Appellee and another man had forced her into a car at gunpoint and had raped her repeatedly in the car. L.Y. testified further that she had had the opportunity to look closely at her assailants as the assault went on for more than an hour in a well-lit area, and she was unwavering in her identification of Appellee as one of the men who had raped and robbed her. Police artists had made a composite sketch of Appellee and the other assailant based on L.Y.'s descriptions of them; the sketch of Appellee was shown to the jury. In addition, L.Y. testified that after Appellee's arrest and while he was awaiting trial, the other assailant had stopped her at gunpoint on the street, and had threatened her and her children with harm if she were to testify against "Vincent." In defense, Appellee

claimed mistaken identity and proffered an alibi, which the jury rejected, finding him guilty of all counts.

In 1992, Appellee filed a Post Conviction Relief Act[1] ("PCRA") petition seeking DNA testing of the panties worn by L.Y. on the night of the assault. The petition was granted, the testing was conducted, and it revealed the presence of DNA from three different men, none of whom could have been Appellee. Based on these findings, in 1995, the PCRA court vacated Appellee's convictions and granted him a new trial. In 1996, the Commonwealth withdrew the charges against Appellee, and an order of *nolle prosse* was entered. The Commonwealth explained that it could not meet its burden of proof at a second trial because it was unable to locate the victim, who had moved from the area after Appellee's 1987 trial.[2]

Years later, in 2007, Appellee filed a petition to expunge all records of his arrest, trial, conviction, and sentence for of-

1. 42 Pa.C.S. §§ 9541–46.

2. Appellee has maintained his innocence of the sexual assault of L.Y. throughout the various proceedings. His petition to expunge represents that he was "exonerated on the basis of DNA evidence" and that DNA testing "conclusively established that [he] could not have committed the crimes for which he was convicted." Appellee's Petition to Expunge, dated 3/5/08, at 1, 2. In Appellee's Brief at 19, he refers to the DNA results as "exculpatory DNA evidence." However, it is important to emphasize that the PCRA court did **not** hold or conclude that the DNA results exonerated Appellee. Rather, the PCRA court found that the DNA results raised a jury question that should have been considered along with the other relevant evidence, and so the court granted Appellee a new trial.

   The PCRA court's reasoning is consistent with that in other sexual assault cases from the Superior Court, which has held that the mere failure of DNA testing to show a match between a semen stain on the victim's underwear and the defendant is not *per se* exculpatory. In *Commonwealth v. Wall*, 953 A.2d 581 (Pa.Super.2008), the defendant-appellant had been convicted of the rape of a 12–year old girl even though DNA testing of a sperm sample found on her underwear excluded him as the depositor of the sperm. On appeal, he claimed that his conviction was against the weight of the evidence, but the Superior Court rejected his claim, concluding that, while the DNA evidence established a plausible alternative theory contradicting the victim's testimony, "it did not require the conclusion that [the appellant] did not rape the victim." *Commonwealth v. Burns*, 988 A.2d 684, 694 (Pa.Super.2009) (*en banc*) (discussing *Wall, supra*).

fenses related to the sexual assault and robbery of L.Y. At an expungement hearing on March 5, 2008, the prosecutor summarized the evidence presented against Appellee at his 1987 trial, evidence to which Appellee stipulated as having been presented. The prosecutor then called the assistant district attorney who had prosecuted the 1987 case against Appellee, to the witness stand. He testified that L.Y.'s account of the assault was detailed and consistent and her identification of Appellee was convincing, but that the threats against her and her children had frightened her and caused her to move from the neighborhood. This witness opined that the DNA evidence did not exculpate Appellee because he may not have ejaculated during the rape. Next, the Commonwealth called the assistant district attorney who was the assistant chief of the Family Violence and Sexual Assault Unit in 1996 when Appellee's case was *nolle prossed.* He testified that the case was *nolle prossed* because of an inability to locate the victim, but stated that if she had been located, the Commonwealth would have retried Appellee. He also opined that the DNA results did not exonerate Appellee, and offered potential explanations for why the DNA on the victim's underwear did not match Appellee's DNA, *i.e.,* Appellee may not have ejaculated during the rape, and the DNA patterns might reflect prior sexual activity with other partners, particularly since biological stains can remain on clothing for many years, even after laundering. Appellee called only a single witness, a private investigator, who testified that, with a brief search of public databases, he had found several addresses where L.Y. was reported to have lived from 1995–1997, which was close to the time when the Commonwealth claimed it could not locate her.

The trial court denied Appellee's petition to expunge, concluding that the Commonwealth had justified the retention of Appellee's arrest record. Trial Court Opinion, dated 6/30/08 (hereinafter "Trial Court Opinion"), at 4. The trial court cited the strength of the Commonwealth's case against Appellee; the credibility of its witnesses; the fact that Appellee had not been found not guilty; and the public's interest in retaining the arrest record of an individual convicted of a serious crime,

such as rape, who is subsequently granted a new trial due to DNA evidence. *Id.* at 4–5.

Appellee appealed to the Superior Court, where a divided panel held that the trial court had abused its discretion and remanded with instructions to expunge Appellee's record. *Commonwealth v. V.A.M.*, 980 A.2d 131 (Pa.Super.2009). The Superior Court concluded that the Commonwealth had not borne its burden of proof, and, in addition, questioned whether the trial court was in possession of information of record required to conduct an appropriate evaluation of Appellee's petition. *Id.* at 137.

We accepted the Commonwealth's petition for allowance of review on the following question:

Did Superior Court err in a matter of first impression where a divided panel in a published opinion: (1) reversed the Common Pleas Court and ordered that [Appellee's] criminal record for rape, involuntary deviate sexual intercourse, conspiracy, and related charges be destroyed; (2) denied that the Common Pleas Court had applied the legal standard set forth in its Rule 1925(a) opinion; and (3) ordered expungement on the extraordinary rationale that it did not know whether the Common Pleas Court was aware of the evidence of record.

*Commonwealth v. V.A.M.*, 605 Pa. 467, 991 A.2d 884 (2010).

There is a long-standing right in this Commonwealth to petition for expungement of a criminal arrest record, a right that is an adjunct of due process. *Carlacci v. Mazaleski*, 568 Pa. 471, 798 A.2d 186, 188 (2002). The decision to grant or deny a petition to expunge rests with the sound discretion of the trial court, and we review that court's decision for abuse of discretion. *Commonwealth v. Waughtel*, 999 A.2d 623, 624–25 (Pa.Super.2010); *Commonwealth v. A.M.R.*, 887 A.2d 1266, 1268 (Pa.Super.2005).

Judicial analysis and evaluation of a petition to expunge depend upon the manner of disposition of the charges against the petitioner. When an individual has been convicted of the offenses charged, then expungement of criminal history

records may be granted only under very limited circumstances that are set forth by statute. 18 Pa.C.S. § 9122; *Hunt v. Pennsylvania State Police*, 603 Pa. 156, 983 A.2d 627, 633 (2009). When a petitioner has been tried and acquitted of the offenses charged, we have held that the petitioner is "automatically entitled to the expungement of his arrest record." *Commonwealth v. D.M.*, 548 Pa. 131, 695 A.2d 770, 772–73 (1997). When a prosecution has been terminated without conviction or acquittal, for reasons such as *nolle prosse* of the charges or the defendant's successful completion of an accelerated rehabilitative disposition program ("ARD"), then this Court has required the trial court to "balance the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records." *Commonwealth v. Wexler*, 431 A.2d 877, 879 (Pa.1981); *D.M.*, *supra* at 772 ("We reiterate the authority of *Wexler* and the balancing test approved therein as the means of deciding petitions to expunge the records of all arrests which are terminated without convictions except in cases of acquittals.").

To aid courts in applying the balancing test for expungement, we also adopted in *Wexler* the following non-exhaustive list of factors that the court should consider:

These factors include [1] the strength of the Commonwealth's case against the petitioner, [2] the reasons the Commonwealth gives for wishing to retain the records, [3] the petitioner's age, criminal record, and employment history, [4] the length of time that has elapsed between the arrest and the petition to expunge, and [5] the specific adverse consequences the petitioner may endure should expunction be denied.

*Wexler*, *supra* at 879 (citation omitted).

We have emphasized that in applying the balancing test and considering the above factors, the court must analyze the particular, specific facts of the case before it. *Id.* at 880–81. The mere assertion by the Commonwealth of a general interest in maintaining accurate records of those accused of a

crime does not outweigh an individual's specific, substantial interest in clearing his or her record. *Id.* at 881–82.

In addition, *Wexler* explicitly placed the burden of proof on the Commonwealth. The case against the *Wexler* appellants had been *nolle prossed* after the Commonwealth had admitted that it would be unable to sustain its burden of proof at trial. *Wexler, supra* at 880. Nonetheless, the trial court denied the appellants' petition to expunge their arrest records, and the Superior Court affirmed. This Court reversed and ordered expungement, concluding that the Commonwealth had not proffered "compelling evidence" to justify the retention of the appellants' arrest records. *Id.* at 881. Importantly, in general terms, we held that when the Commonwealth admits that it is unable to bear its burden of proof beyond a reasonable doubt at trial, then "the Commonwealth must bear the burden of justifying why the arrest record should not be expunged." *Id.* at 880.

Just a few months after *Wexler* was decided, we extended its rationale, balancing test, and non-exhaustive list of relevant factors to order expungement of the arrest record of an offender who had successfully completed an ARD program. *Commonwealth v. Armstrong,* 495 Pa. 506, 434 A.2d 1205 (1981). In *Armstrong,* we emphasized the policy undergirding ARD, *i.e.,* to provide first-time offenders a fresh start. *Id.* at 1208.

Following this Court's decisions in *Armstrong* and *Wexler,* the Superior Court considered petitions to expunge under a number of diverse circumstances. For example, the Superior Court held that expungement of an arrest record was proper, based on application of the *Wexler* factors, when the petitioner had agreed to resign his school employment in consideration of the Commonwealth's dropping of the charges against him, which were related to an alleged library theft. *Commonwealth v. A.M.R.,* 887 A.2d 1266, 1267–70 (Pa.Super.2005). The court emphasized the petitioner's altruistic motivation, the lack of any evidence that charges would ever be reinstated, and the immediate deleterious effects of the record of petitioner's arrest on his employment possibilities. *Id.* at 1271. In

*Rambo v. Commissioner of Police,* 301 Pa.Super. 135, 447 A.2d 279 (1982), the Superior Court reversed the trial court and ordered expungement of a petitioner's arrest record after his conviction on drug-related charges was unanimously overturned by this Court based on insufficient evidence. The Superior Court emphasized that the effect of our ruling was to acquit the petitioner, and thus there was no reason to retain his arrest record. *Id.* at 281–82.

In other circumstances, the Superior Court has concluded that a petitioner's arrest record should be retained. For example, the Superior Court affirmed a trial court's order denying expungement of domestic assault charges, at least temporarily, in a case where the Commonwealth had dismissed the charges due to the wife-complainant's refusal to testify against the husband-defendant. *Commonwealth v.Drummond,* 694 A.2d 1111 (Pa.Super.1997). Applying the *Wexler* factors, the Superior Court recognized the Commonwealth's strong case against the husband-defendant; the severity of the wife-complainant's injuries and her complaints of a continuing pattern of abuse; and the short time period, *i.e.,* just over a year, between the husband-defendant's arrest and his petition to expunge. *Id.* at 1113–14. Similarly, the Superior Court affirmed the denial of a petition to expunge in *Commonwealth v. Persia,* 449 Pa.Super. 332, 673 A.2d 969 (1996), a case in which the Commonwealth *nolle prossed* charges related to sexual molestation of a minor, because the minor was unable to testify in court against the alleged offender.

In the instant case, the parties, the trial court, and the Superior Court appear to agree that the balancing test set forth in *Wexler* applies and should control the outcome of the instant case. However, there is wide disagreement concerning how the *Wexler* factors should be applied to the facts and circumstances here presented. The Commonwealth argues that the trial court properly applied the *Wexler* balancing test and reasonably afforded great weight to the first *Wexler* factor, *i.e.,* the strength of the Commonwealth's case against Appellee, as presented during his 1987 trial. In direct con-

trast, Appellee asserts that the trial court's reliance on evidence presented at his 1987 trial to assess the strength of the Commonwealth's current case against him was improper because he had been granted a new trial and thus was presumed to be innocent. In addition, in agreement with the Superior Court, Appellee contends that the trial court's *Wexler* analysis was flawed because it did not include an analysis of the additional specified factors.

We are unable to agree with Appellee's assertions or the Superior Court's determinations of trial court error, as we explain in detail *infra*. The Superior Court's conclusion that the trial court failed to consider all of the *Wexler* factors not only lacks support in the record, but also is inconsistent with legal presumptions of this Commonwealth. *V.A.M.*, 980 A.2d at 137. In its opinion, the trial court clearly and correctly explained the *Wexler* balancing test, listed the prescribed factors, and stated that it had "conducted . . . the balancing test set forth in *Wexler*." Trial Court Opinion at 3–4. The trial court then expressly stated that, in reaching its decision that the Commonwealth had met its burden to justify retention of Appellee's arrest record, the court had "placed great weight in the strength of the Commonwealth's case against [Appellee]." *Id.* at 4. The trial court further explained that Appellee was never found not guilty, and was not retried after his conviction was vacated because the Commonwealth could not locate the victim. *Id.* at 5. The trial court also expressly found the testimony of the two assistant district attorneys "to be entirely reasonable and credible," and concluded that the DNA results did not establish Appellee's innocence of the rape. *Id.* Thus, the trial court explained in considerable detail its reasons for denying Appellee's petition to expunge, even though it did not specifically and individually address each and every *Wexler* factor.

██ In this Commonwealth, there is a presumption that when a court has facts in its possession, it will apply them. *Commonwealth v. Jackson*, 555 Pa. 37, 722 A.2d 1030, 1034 (1999) (articulating this presumption in the context of an adult certification matter); *Commonwealth v. Devers*, 519 Pa. 88,

546 A.2d 12, 18 (1988) (articulating this presumption in the context of a sentencing court's decision). Furthermore, in the absence of evidence to the contrary, we presume that the trial court carefully considered the **entire** record, and we do not require the court to prove that it did so by citing to each fact and circumstance of the case. *See Jackson, supra* at 1034. In *Jackson,* where the issue was the adequacy of the juvenile court's explanation of its decision to transfer the appellee's case to the adult criminal division for trial, we explained this principle as follows: "A juvenile court must consider all of the factors set forth in [the relevant section] of the Juvenile Act, but it need not address, *seriatim,* the applicability and importance of each factor and fact in reaching its final determination." *Id.* What a trial court **must** do is to explain the rationale for its decision in legal and factual detail sufficient to allow meaningful review. *See id.* at 1036.

Here, the trial court expressly made clear both its correct understanding of *Wexler's* balancing test, as well as its reasons for denying Appellee's petition. *See supra* (citing Trial Court Opinion). The record reveals information concerning each of the *Wexler* factors. That the trial court opinion did not explicitly discuss each and every one of the *Wexler* factors is of no moment, and certainly does not lead to the inference that the trial court did not thoroughly consider all the factors and did not properly apply the balancing test. Accordingly, we hold that the Superior Court erred in concluding that the trial court failed to address all the *Wexler* factors and thus abused its discretion.[3]

**3.** The Superior Court also stated that it was "not able to confirm that the [trial] court was in possession of [ ] information relating to the other *Wexler* factors," while at the same time acknowledging that the information was in the record. *V.A.M.,* 980 A.2d at 137. We do not understand this comment, and we are unable to discern the nature or extent of the information to which the Superior Court is referring. In dissenting from the Superior Court panel's holding, Judge Shogan concluded that the trial court did indeed have sufficient information to conduct a *Wexler* balancing test. *V.A.M.,* 980 A.2d at 138 (dissenting opinion, Shogan, J.).

The Commonwealth indicates that, for unknown reasons, certain information, including Appellee's criminal history, was omitted from the record certified to the Superior Court on appeal. Commonwealth's

As mentioned above, the trial court denied Appellee's petition to expunge based primarily on the strength of the original 1987 case against him and the inability of the DNA evidence to exonerate him, as set forth by the unrefuted testimony of two assistant district attorneys, both of whom the court found credible and reasonable. *See* Trial Court Opinion at 2–5. The trial court also credited the Commonwealth's evidence that it *nolle prossed* Appellee's case because of an inability to locate the victim. *Id.* at 5. The Superior Court, for unexplained reasons, declined to comment on the trial court's finding that the Commonwealth's case against Appellee was strong. *V.A.M.,* 980 A.2d at 137.[4]

■ Appellee contends that it was improper for the trial court to assess the strength of the Commonwealth's case against him using evidence presented at his 1987 trial. Appellee asserts that, in 1995, when the trial court vacated Appellee's convictions and granted him a new trial, his 1987 trial was rendered a "legal nullity" and he was "again cloaked in the presumption of innocence." Appellee's Brief at 14, 17. Thus, Appellee argues, the strength of the Commonwealth's case for purposes of his petition to expunge the *nolle prossed* charges against him can be assessed **only** on the basis of evidence that was available at the time he was granted a new trial. Appellee's Brief at 16. Because the Commonwealth could not find the victim and there were no other witnesses to

Brief at 25 n. 11. It is undisputed that defense counsel provided the trial court with a summary chart of Appellee's arrest history, including the date and disposition of each arrest. Notes of Testimony ("N.T."), Expungement Hearing, 3/5/08, at 62. The Commonwealth filed a motion to correct an omission in the record on appeal to this Court, seeking to include, *inter alia,* the summary chart of Appellee's arrest history. Appellee did not object to inclusion of this summary chart in the certified record, and we granted the Commonwealth's motion. Whether the Superior Court was specifically referring to this summary chart in its comment above, we do not know.

4.  We do not understand the reason for the Superior Court's failure to address this aspect of the case. We note, however, that the propriety of the Superior Court's failure to comment is highly questionable given that the strength of the Commonwealth's case was a determining factor in the trial court's denial of Appellee's petition to expunge, and that this consideration was primary among the *Wexler* factors.

testify as to Appellee's involvement in the crime, Appellee maintains that the case against him was not just weak, but was non-existent, at the time he was granted a new trial—the only relevant time, in Appellee's view. *Id.* at 16–17.

To support this argument, Appellee cites *Commonwealth v. Miller*, 325 Pa.Super. 526, 473 A.2d 193 (1984), in which the Superior Court ordered the trial court to expunge the appellant's arrest for burglary. *See* Appellee's Brief at 14, 20. The appellant had pled guilty to the burglary charge on the advice of his counsel; however, a federal district court concluded that defense counsel had been ineffective for failing to disclose that he also represented the victim of the burglary in an unrelated civil matter, and so granted the appellant a new trial. The Commonwealth never retried the appellant on the burglary charge. Years later, the appellant sought expungement of the burglary arrest from his criminal record. The trial court denied his petition to expunge, but the Superior Court reversed, reasoning that "a guilty plea entered by a defendant who has not been afforded the effective assistance of counsel is a nullity." *Id.* at 194.

Appellee's attempt to extend *Miller's* holding to his own circumstances is unavailing because he reads *Miller* too broadly. In *Miller*, the only evidence of record supporting the appellant's guilt was his guilty plea, which he had entered on the advice of counsel.[5] By holding that defense counsel's undisclosed conflict of interest made the guilty plea a "nullity," the Superior Court in *Miller* rendered completely infirm the **only** evidence of record supporting the appellant's guilt. Hence, during the expungement proceedings, when the court sought to assess the strength of the Commonwealth's case against the appellant, there was absolutely no evidence of record on which it could rely. Accordingly, analysis of the first *Wexler* factor militated strongly in favor of expungement. *Miller, supra* at 195.

5. In *Miller,* the appellant had also signed a confession to the burglary, but this was not a part of the record and therefore it was not considered. *Miller,* 473 A.2d at 193–94.

In contrast, here, the DNA results did not render infirm or reduce to a "nullity" any of the evidence presented at Appellee's 1987 trial for the sexual assault of L.Y. Rather, the DNA results would have constituted another item of evidence for the jury, which item necessarily would have rested alongside the other evidence proffered and other questions raised for that body's deliberation. It would have been for the jury to decide whether the failure to detect Appellee's DNA was more compelling than the victim's testimony, or, alternatively, whether the DNA results were not determinative in light of the other evidence implicating Appellee and the variety of possible explanations for the failure to detect his DNA. Of course, Appellee is correct that, had he been retried, he would have entered that proceeding "cloaked in the presumption of innocence," and there he would have remained unless he were convicted a second time. Appellee's Brief at 17. But an expungement hearing is not the same as a new trial. The Superior Court has recognized that an expungement hearing is not a criminal proceeding and the relief sought is civil in nature. *Commonwealth v. Bailey*, 278 Pa.Super. 51, 419 A.2d 1351, 1352 (1980). An expungement hearing is characterized by its own inquiry and its own standards, which are distinct from those of a criminal trial.

We cannot agree that the evidence presented at Appellee's 1987 trial was irrelevant to or improperly considered during his expungement proceedings, given the circumstances presented here, *i.e.*, where Appellee was tried and convicted by jury; where subsequently analyzed DNA evidence led to the grant of a new trial, but did not render infirm the evidence presented at the original trial, and did not exonerate Appellee; and where a second trial was precluded by the Commonwealth's inability to locate the victim many years after the offense because she had moved.

In sum, the trial court in this case held an expungement hearing, applied the proper standard according to prevailing law in *Wexler* to the facts of the case, balanced the relevant factors, and then denied Appellee's petition to expunge. Given the circumstances of this case and the record before us, we

cannot conclude that the court abused its discretion.[6]   Accord-

6.  Appellee contends that the trial court incorrectly interpreted and applied the second *Wexler* factor, *i.e.*, the Commonwealth's reasons for wishing to retain the criminal records, and that the Superior Court properly determined that the trial court had abused its discretion in this regard.   Appellee's Brief at 27–30 (citing *V.A.M.*, 980 A.2d at 137). In *Wexler*, we explained that the Commonwealth's "mere assertion of a **general interest** in maintaining accurate records of those accused of crime" would not suffice to convince the court of the necessity to retain the arrest records of any particular individual.   *Wexler*, 431 A.2d at 880–81 (emphasis added).   Rather, the special facts and particular circumstances of each individual case must be cited and analyzed to establish why the Commonwealth wishes to retain that specific individual's records.   There is no dispute between the parties here that the Commonwealth's assertion of a general interest in maintaining accurate criminal records is not sufficient to justify retention of the records. We acknowledge that, as Appellee asserts, some of the trial court language, if viewed in isolation, may suggest that the trial court was indeed giving weight to the Commonwealth's "general interest" in maintaining accurate criminal records.   For example, the trial court wrote that "the Commonwealth has a great interest in retaining the arrest record stemming from crimes as serious as rape."   Trial Court Opinion at 5.   However, we do not interpret this sentence in isolation, but rather view it in the context of the rest of the paragraph in which it was found, which clarifies that the trial court did analyze the specific facts and circumstances of Appellee's case.
Immediately after the sentence quoted above, the trial court discussed the particular facts and circumstances of Appellee's case as follows: "The general public should have knowledge of the arrest of a person for rape where they [sic] are convicted, and then later are granted a new trial due to DNA evidence."   *Id.*   This sentence does not assert a "general interest," but rather conveys concern for individuals such as Appellee who were convicted of rape and subsequently granted a new trial as a result of new DNA evidence that did not *per se* exonerate them.   Finally, the last sentence of the paragraph makes very clear that the trial court was indeed contemplating Appellee's specific circumstances: "Specifically in this case, a *nolle prosse* of [Appellee's] charges, ten years after the incident occurred, because the victim could not be found, is not enough to justify granting the expungement of [Appellee's] arrest record for that crime."   *Id.*
While the trial court could have articulated its rationale more artfully, we cannot conclude that the trial court's legal understanding or practical application of *Wexler* suggests deficiencies constituting an abuse of discretion.
Appellee further contends that all of the remaining *Wexler* factors "weigh heavily" in favor of expungement, and that the trial court erred by not considering them.   Appellant's Brief at 30, 32, 37.   As we have already explained, the trial court provided, in sufficient detail, its reasons for denying expungement, and thus the fact that the court did not explicitly address each and every *Wexler* factor is of no moment. *See* text *supra.*   Furthermore, based on our comprehensive review of

the record, we cannot agree with Appellee that the remaining *Wexler* factors uniformly and strongly support expungement. We briefly discuss each of the remaining *Wexler* factors in light of the facts of record, *infra*.

Appellee was 44 years of age at the time of the expungement hearing, and he provides no authority to suggest that his middle age can be a mitigating factor. In fact, Appellee admits that his "current age may not itself be a mitigating factor." Appellee's Brief at 33. We agree. *See Commonwealth v. Rivers*, 537 Pa. 394, 644 A.2d 710, 719–20 (1994) (discussing age in the context of the penalty phase of a capital case and making clear that defendants of 34 or 42 years of age cannot offer their age as a mitigating factor); *Persia*, 673 A.2d at 971 (concluding that the appellant's age of 48 did not militate in favor of granting his petition to expunge).

Appellee's criminal history reveals a total of ten arrests, one of which apparently occurred while he was in prison and five of which occurred after his release. In 1985, prior to his arrest for the rape of L.Y., he was convicted of criminal trespass, simple assault, possession of an instrument of crime, and criminal conspiracy. In 1993, he pled guilty to receiving stolen property. As Appellee correctly points out, all of the charges he has incurred since his release, except for one, have ultimately been withdrawn or *nolle prossed*. The only post-release charge that resulted in a conviction was for defiant trespass, to which he pled guilty in 1998. While Appellee's criminal history includes no other charges as serious as rape, it is hardly an unblemished record.

With regard to employment history, Appellee presented no evidence. Defense counsel at the expungement hearing represented in opening argument only that Appellee was currently unemployed and was "on disability," although prior to being disabled, he "tried to obtain gainful employment." N.T., Expungement Hearing, 3/5/08, at 14.

At the time of Appellee's expungement hearing, 22 years had passed since his arrest for the rape of L.Y., and 14 years had passed since he was released from prison. This is certainly a substantial amount of time over which to consider Appellee's activities, including his criminal record and employment history. *See Wexler* at 882 (noting that four years had passed since the arrest of the petitioner for expungement, and that during this time she had not been involved in any further criminal activity and was employed as a cashier).

The final *Wexler* factor is the "specific adverse consequences the petitioner may endure should expunction be denied." *Wexler, supra* at 879 (citation omitted). We acknowledge, as we did in *Wexler*, the "serious harm" that an individual may suffer as a result of retention of his or her arrest record. *Id.* Appellee relies on the self-evident harm and stigma of an arrest record for a serious crime such as rape. Appellee further states that his "record continues to improperly suggest his guilt relating to crimes for which he should now be presumed innocent in the eyes of both the law *and the public*." Appellee's Brief at 37 (emphasis in original). Here, Appellee exaggerates the significance of the judicial determination as to the DNA results for the purposes of an expungement petition. The court did **not** conclude that he was exonerated, but rather granted him a new trial. *See* text, *supra*.

Having reviewed the record as to each of the *Wexler* factors not explicitly discussed by the trial court, we cannot accept Appellee's

ingly, we hold that the Superior Court erred in reversing the trial court's denial of Appellee's petition to expunge, and we now reverse the order of the Superior Court.

Justices EAKIN, BAER and Justice TODD join the opinion.

Justice SAYLOR files a dissenting opinion in which Chief Justice CASTILLE and Justice ORIE MELVIN join.

Justice SAYLOR, dissenting.

I differ with the majority's treatment of Section 9122 of the Criminal History Record Information Act,[1] as well as its determination to reverse the Superior Court's order. With respect to the latter, I would remand this case to the trial court to provide an opinion rendered in sufficient legal and factual detail to allow for meaningful appellate review. My reasoning is as follows.

Preliminarily, it is my understanding that Section 9122 sets forth two distinct rules for purposes of expunging "[c]riminal history record information." 18 Pa.C.S. § 9122.[2] Expungement is discretionary when sought to purge criminal history record information generally (*i.e.*, to wipe the slate clean). *See id.* § 9122(b). For instance, expungement is allowed when the "individual who is the subject of the information has been dead for three years." *Id.* § 9122(b)(2). In contrast, expungement is mandatory in certain instances in which a person seeks to remove criminal record information in connec-

assertion that they uniformly and strongly support expungement. The record reveals a reality that is more complex, where any support for expungement is subtle and must be balanced with more negative aspects of Appellee's history and circumstances. Appellee's assertion that the trial court abused its discretion by not ordering expungement in light of the above-discussed factors is meritless.

1. Act of July 16, 1979, P.L. 116, No. 47, § 2 (as amended 18 Pa.C.S. §§ 9101–9183) (the "Act" or the "CHRIA").

2. Under the Act, "criminal record history information" is defined as "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom." 18 Pa.C.S. § 9102.

tion with a *specific proceeding.* *See id.* § 9122(a). For example, expungement is required when an individual 21 years of age or older who has been convicted of violating Section 6308 of the Crimes Code, *id.* § 6308,[3] "petitions the court of common pleas in the county where the conviction occurred seeking expungement and the person has satisfied all terms and conditions of the sentence imposed for the violation...." *Id.* § 9122(a)(3).[4]

The majority seems to suggest that Section 9122 only applies to conviction scenarios, that is, "[w]hen an individual has been convicted of the offenses charged." Majority Opinion, *op.* at 101–02, 23 A.3d at 993. Insofar as the majority endorses that view, I depart from its reasoning, since the provision, by its plain terms, also pertains to non-conviction situations. *See, e.g.,* 18 Pa.C.S. § 9122(a)(1) (requiring expungement in a specific proceeding when "no disposition has been received or, upon request for criminal history record information, no disposition has been recorded in the repository within 18 months after the date of arrest and the court of proper jurisdiction certifies to the director of the repository that no disposition is available and no action is pending.").

Nor do I agree, to the extent the majority indicates as much, that Section 9122 only sanctions expungement in "very limited circumstances." Majority Opinion, *op.* at 101–02, 23 A.3d at 993. While this Court has yet to address the meaning of subsection (a)(2), on its face, it supplies trial courts with a mechanism to expunge criminal history record information apart from those instances listed in subsections (a)(1), (a)(3), and (b). *See* 18 Pa.C.S. § 9122(a)(2) ("Criminal history record information shall be expunged in a specific criminal proceeding when ... a court order requires that such nonconviction data be expunged[.]"). Given that Section 9122(a)(2) does not impose any conditions on a trial court's ability to exercise this

3. *See* 18 Pa.C.S. § 6308 ("Purchase, consumption, possession or transportation of liquor or malt or brewed beverages").

4. The above overlay is subject to the restrictions contained in Section 9122(b.1). *See* 18 Pa.C.S. § 9122(b.1) (prohibiting a court from expunging a defendant's arrest record under certain circumstances).

authority, save those set forth in subsection (b.1), *see supra* note 4, I would not couch Section 9122 in such narrow terms, at least not at this juncture.

Further, it is unclear whether the majority believes that the expungement standards set out in *Commonwealth v. Wexler*, 494 Pa. 325, 431 A.2d 877 (1981), operate independently from the legislative scheme reflected in Section 9122 and, in particular, subsection (a)(2). *See* Majority Opinion, *op.* at 101–02, 23 A.3d at 993. To the degree that the majority supports such a view, I differ with the majority and offer the following comments.

By way of background, the *Wexler* expungement standards evolved from a series of *en banc* Superior Court rulings.[5] Notably, when these decisions were issued, the General Assembly had not afforded a statutory right to expungement. *See, e.g., Commonwealth v. Malone*, 244 Pa.Super. 62, 65–66, 366 A.2d 584, 586 (1976). Believing that an individual's right to seek expungement of an arrest record was "an adjunct to due process" and was not dependent upon express statutory authority, *id.* at 68, 366 A.2d at 587, the Superior Court devised a balancing test for evaluating expungement petitions in which the trial court weighed the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records. *See id.* at 70, 366 A.2d at 588–89; *Wert v. Jennings*, 249 Pa.Super. 467, 471, 378 A.2d 390, 392 (1977).

The Legislature subsequently passed the CHRIA, which, as noted, set forth, among other things, a statutory expungement scheme. As relevant here, the Act provided (and still provides) that "[c]riminal history record information shall be expunged in a specific proceeding when ... a court order requires that such nonconviction data be expunged." Act of July 16, 1979, P.L. 116, No. 47, § 2 (as amended 18 Pa.C.S. § 9122(a)(2)).

5. *See Commonwealth v. Malone*, 244 Pa.Super. 62, 366 A.2d 584 (1976) (*en banc* ); *Wert v. Jennings*, 249 Pa.Super. 467, 378 A.2d 390 (1977) (*en banc* ); *Commonwealth v. Mueller*, 258 Pa. Super. 219, 392 A.2d 763 (1978) (*en banc* ); *Commonwealth v. Rose*, 263 Pa.Super. 349, 397 A.2d 1243 (1979) (*en banc* ) (*per curiam* ); *Commonwealth v. Iacino*, 270 Pa.Super. 350, 411 A.2d 754 (1979) (*en banc* ).

In *Wexler*—the seminal expungement case in which this Court adopted the Superior Court's balancing test, as well as the factors Judge Spaeth set forth in *Iacino, see Wexler*, 494 Pa. at 329–30, 431 A.2d at 879 (quoting *Commonwealth v. Iacino*, 270 Pa.Super. 350, 358, 411 A.2d 754, 759 (1979) (Spaeth, J., concurring))—the Court did not mention that legislation.[6] Instead, the *Wexler* Court reasoned that an accused's right to have his or her arrest record expunged was guaranteed by substantive due process. *See id.* at 329, 431 A.2d at 879 (citing *Malone*, 244 Pa.Super. at 68–69, 366 A.2d at 587–88). In subsequent rulings, though, this Court seemed to revert to *Malone's* treatment of the right as "an adjunct to due process." *Commonwealth v. Armstrong*, 495 Pa. 506, 509, 434 A.2d 1205, 1206 (1981); *see Carlacci v. Mazaleski*, 568 Pa. 471, 474, 477, 798 A.2d 186, 188, 190 (2002). Neither position rests on sound constitutional footing, however.

As concerns the belief that the right is guaranteed by substantive due process, the *Wexler* Court did not specify whether it was referring to the Due Process Clause of the Fourteenth Amendment of the United States Constitution or Article I, Section 9 of the Pennsylvania Constitution. Although the Court has, at times, afforded greater protection under the Pennsylvania Constitution than is required under its federal counterpart, *see, e.g., Commonwealth v. Edmunds*, 526 Pa. 374, 388–91, 586 A.2d 887, 894–95 (1991), we have generally treated the Due Process Clause of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution as coextensive. *See, e.g., Commonwealth v. Sims*, 591 Pa. 506, 523 n. 6, 919 A.2d 931, 941 n. 6 (2007). Of importance here, the United States Supreme Court has held that substantive due process protection is only afforded to "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Wash-*

6. Presumably, this is because it did not apply in that case, as that appeal concerned an expungement petition filed before the Act's passage.

*ington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997) (quotation marks and citations omitted).[7] Even if the right to petition for expungement of an arrest record could arguably be considered such a right, the Supreme Court has been reluctant to expand the concept of substantive due process protection to encompass a new asserted right or liberty interest. *See id.* at 720, 117 S.Ct. at 2267–68.

With regard to the assertion that the right is "an adjunct to due process," the *Malone* court did not supply any authority for this proposition and, indeed, conceded that, although it appeared that Pennsylvania appellate courts had recognized a right to expungement, none of those tribunals had provided a legal basis for that right. *Malone*, 244 Pa.Super. at 68, 366 A.2d at 587. Further, this Court has never employed the "adjunct to due process" terminology outside of the expungement context. Thus, but for the bald pronouncement that the right is constitutionally derived by various courts, *Wexler's* scheme most closely resembles a common law system for administering expungements.

Normally, I would find tension in the maintenance of such a judge-made system, since the Legislature has implemented a statutory expungement scheme. *See, e.g., Sternlicht v. Sternlicht*, 583 Pa. 149, 163, 876 A.2d 904, 912 (2005) ("Where the Legislature expressly provides a comprehensive legislative scheme, these provisions supersede the prior common law principles."). Notably, other jurisdictions have been reluctant to administer expungement under the common law where the policy-making branch has established the conditions for expungement.[8] The difference here is that there is a colorable

7. Such rights include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, and to bodily integrity. *See Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267 (collecting cases).

8. *See, e.g., State v. Chesley*, 92 P.3d 1212, 1215 (Mont.2004) ("Absent explicit authorization from the legislature, we conclude that the judiciary has no power to expunge criminal records. Expungement of such records is a matter of legislative discretion."); *Oler v. United States*, 17 P.3d 27, 30 (Wyo.2001) ("The expungement of a criminal record is an

argument that the General Assembly intended to codify, rather than displace, this common law scheme when it enacted Section 9122(a)(2) of the CHRIA.

As indicated above, under that subsection, expungement is mandatory when "a court order requires that such nonconviction data be expunged." 18 Pa.C.S. § 9122(a)(2). While this provision commands expungement when a trial court exerts this power, it fails to specify the conditions, if any, for when that tribunal can exercise this authority. *See id.* It seems plausible that, given the Superior Court's judicially-crafted expungement standards—which, at the time of the Act's passage, were of recent creation and believed to be rooted in due process—the Legislature intended (or, perhaps, felt compelled) to preserve this supposed constitutional scheme under Section 9122(a)(2). *See* 1 Pa.C.S. § 1922(3) (reflecting the presumption that the General Assembly does not intend to violate the United States or Pennsylvania Constitution when enacting a law).

In any event, this Court has viewed the *Wexler* expungement standards as conforming with Section 9122(a)(2)'s terms,[9] and even though the Legislature has subsequently amended the CHRIA, it has not altered this subsection in the wake of that ruling. *See id.* § 1922(4) ("That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language."). Accordingly, despite the fact that there appears to be no actual constitutional basis for the right to expunge-

extraordinary form of relief and can only be recognized where the legislature has specifically provided for it. We consistently have ruled that courts have no inherent power to expunge criminal records." (citation omitted)). *See generally Program Admin. Servs., Inc. v. Dauphin County Gen. Auth.*, 593 Pa. 184, 192, 928 A.2d 1013, 1017–18 (2007) ("[I]t is the Legislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations.")

9. *See Armstrong*, 495 Pa. at 513 n. 8, 434 A.2d at 1209 n. 8 ("Our decision is in accord with the provisions of the Criminal History Record Information Acts of 1978 and 1979. *See* 18 Pa.C.S. § 9122(a)(2) & (c) (Supp. 1989–1982). The present case, however, arose before the effective dates of those statutes.").

ment, which formed the foundation for the *Wexler* expungement standards, it reasons that the Court should continue to apply those principles for purposes of Section 9122(a)(2), at least unless and until the Legislature indicates otherwise.[10]

On the merits of this case, I believe that a reasoned treatment of a balancing inquiry by a court of original jurisdiction should demonstrate some weighing of the *Wexler* factors on both sides of the equation. Such balancing is lacking here, as the trial court only provided analysis for the first two considerations—the strength of the Commonwealth's case against the petitioner and the reasons the Commonwealth gives for wishing to retain the record—factors which only concern the interests of the Commonwealth. *See Commonwealth v. Moto*, No. CP–51–CR–0603191–1986, *slip op.* at 3–5 (C.P.Phila., July 1, 2008). I therefore find the best course to be to return the matter to the court of original jurisdiction to provide an opinion rendered in sufficient legal and factual detail to allow for meaningful appellate review. Respectfully, I do not support the presumption of balancing created by the majority. *See* Majority Opinion, *op.* at 105–06, 23 A.3d at 995.

Chief Justice CASTILLE and Justice ORIE MELVIN join this Dissenting Opinion.

10. Parenthetically, while the Superior Court has held that a person cannot expunge his conviction records under the *Wexler* expungement standards, *see Commonwealth v. Madgon*, 310 Pa.Super. 84, 456 A.2d 194 (1983), we have never addressed that issue. Therefore, it remains an open question whether, pursuant to Section 9122(a)(2), a trial court could order expungement of criminal history record information for a person convicted of a crime.