J-A24026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| INSUN PARK | |
| Appellant | No. 671 EDA 2015 |

Appeal from the Order of February 20, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0004689-2013

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 30, 2015**

Insun Park appeals the February 20, 2015 order that denied her petition to expunge a *nolle prossed* charge from her record.  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> According to the affidavit of probable case filed on the record in the above-captioned matter, on May 3, 2013, in the parking lot of a department store, passers-by called the police when they heard a child crying in a mini-van at approximately five minutes before noon.  Although the two rear windows of the van were opened about one inch, Montgomery Township Police Officer Taylor Jones, who responded to the call, observed the child to be "in distress, crying and sweating."  The outdoor temperature was 63 degrees.  When [Park] arrived at the scene, she told Officer Jones [that] she took her three-and-one-half year-old daughter into the store with her, but left her sixteen-month-old son

---

[*]    Retired Senior Judge assigned to the Superior Court.

unattended in the mini-van because he was sleeping and she did not want to waken him. Officer Jones reviewed a video recording of the parking lot that morning and learned that [Park] had parked her car and entered the department store at 11:44 a.m. and did not return to her vehicle until 12:08 p.m.

Officer Jones charged [Park] with the first-degree misdemeanor of endangering the welfare of a child, 18 Pa.C.S. § 4304(a)(1)[,] and the summary offense of leaving an unattended child in a motor vehicle, 75 Pa.C.S. § 3701.1(a). [Park,] through counsel, waived her right to a preliminary hearing. . . .

After the magisterial district justice transferred the charges to the [C]ourt of [C]ommon [P]leas, defense counsel applied to the District Attorney for Accelerated Rehabilitative Disposition (A.R.D.)[.] On October 17, 2013, the District Attorney denied the A.R.D. application, noting "crime against a child" as the reason. On March 26, 2014, and again on June 4, 2014, the District Attorney reconsidered the A.R.D. application and denied it for the same reason. The consistent refusal to give [Park] A.R.D. is circumstantial evidence that the District Attorney did not doubt that the evidence against [Park] was sufficient and persuasive enough to support a conviction on the misdemeanor charge.

[Park] entered a plea of guilty to the summary charge on July 29, 2014, approximately eight months [before the trial court authored its opinion]. Although the sentencing sheet lists the disposition as an "open" guilty plea,[1] the prosecutor stated that the parties agreed to "a recommended sentence of three months' probation plus costs" and twenty-four hours' community service, and the Honorable Judge Thomas P. Rogers imposed that exact sentence. The sentencing sheet also indicated that the misdemeanor charge was *nolle prossed* by the Commonwealth, and Judge Rogers stated on the record, "The motion of the district attorney to *nol[le]-pros* is granted," but the prosecutor did not file a written motion to *nolle pros* the misdemeanor charge, nor did she make an oral motion to do so at the plea hearing. Judge Rogers sentenced [Park] to pay the costs of prosecution for the misdemeanor charge, which is

---

1 However, both the docket and the July 30, 2014 call of the trial list note that it was a negotiated plea.

circumstantial evidence of a compromise: the Commonwealth would refrain from prosecuting the misdemeanor in exchange for [Park] paying the Commonwealth's costs of prosecuting that charge. It is also circumstantial evidence that the prosecutor did not concede that she could not prove [Park] guilty beyond a reasonable doubt, and that Judge Rogers did not assume she lacked evidence that was sufficient and persuasive enough to do so. Notwithstanding the foregoing circumstantial evidence, the transcribed notes of the guilty plea hearing do not include any testimony or statement by [Park], her lawyer or the prosecutor indicating whether the prosecutor *nolle prossed* the charge of endangering the welfare of a child in exchange for [Park's] agreement to plead guilty to the summary offense of leaving an unattended child in a motor vehicle; and if so, why.

At the hearing on [Park's] petition for expungement, [Park] was not sure whether expungement was part of the negotiated plea agreement, nor whether she expected at the time of her plea that the record of her arrest for the misdemeanor charge would eventually be expunged. Her lawyer stated that he could stipulate that a promise of expungement was not one of the terms of the negotiated plea agreement, and although the Commonwealth's lawyer did not reject the offer to stipulate, he did not accept it, and neither did the court.

The Commonwealth's lawyer did not claim that [Park] agreed to forgo expungement in the future, but he did state on the record, "The charges were not *nolle prossed* or withdrawn on our part because of a lack of evidence or inability to show guilt on her side. It's because we agreed to this as a plea agreement." The Commonwealth's lawyer at the expungement hearing was not the assistant district attorney who negotiated the guilty plea, and the record is devoid of evidence that the former had personal knowledge of the reason the latter moved to *nolle pros* the misdemeanor charge.

Less than four months after [Park] pled guilty, she filed a petition in which she asked the court to expunge the *nol[le] prossed* charge of endangering the welfare of a child. During that short time, [Park] had paid the fines and costs imposed as part of her sentence, and completed the community service obligation that was part of her sentence. Her petition averred that: [Park] had not been arrested since she had entered her guilty plea; she was 31 years old and a college graduate; and the arrest record would be "harmful to [Park's] reputation and

- 3 -

calling, and is likely to interfere with her earnings and livelihood." At the hearing on the petition, [Park] testified that prior to pleading guilty in the above-captioned matter, she had never been arrested. The Commonwealth produced no evidence to the contrary.

[Park] also testified that she wished to apply for a job as a "medical interpreter" for patients who do not speak English, but she was told by one prospective employer, Phoenix Language Services, that it checks the criminal records of job applicants, and "[i]t has to be clear. Nothing has to be on the record . . . ." Nonetheless, the arrest and conviction did not prevent [Park] from continuing her vocation of teaching piano to children.

Finally, [Park] testified that she had lawful permanent resident status in the United States, but was not a citizen. She stated that she wished to become a citizen, but the record of her arrest would disqualify her from being granted citizenship. Neither her lawyer nor the lawyer for the Commonwealth cited authority supporting or disproving the legal conclusion to which she testified.

The lawyer for the Commonwealth did not express a desire to deny expungement at a later date. He conceded that a judge of [the Court of Common Pleas] could exercise his or her discretion to expunge the record of the summary conviction when five years had elapsed after that conviction . . ., but asked "to at least keep these charges on the record" during that period, "in case she does have further contacts with the police." Nor did [the trial court] judge order that [Park] be permanently denied expungement. . . . Noting also that "this just occurred, and this is not even within eight months of where we are right now," the [trial court] judge weighed the circumstances and denied the petition [on February 20, 2015].

Trial Court Opinion ("T.C.O."), 4/20/2015, at 1-5 (citations to record omitted).

On March 10, 2015, Park filed a notice of appeal. The trial court ordered, and Park timely filed, a concise statement of errors complained of

on appeal pursuant to Pa.R.A.P. 1925(b). On April 20, 2015, the trial court filed its Pa.R.A.P. 1925(a) opinion.

Park raises one issue for our review: "When the Commonwealth failed to present any evidence, did they meet their heavy burden of producing compelling evidence that the endangering welfare charge they *nol[le] prossed* should not be expunged." Park's Brief at 2.

"The decision to grant or deny a petition to expunge rests with the sound discretion of the trial court, and we review that court's decision for abuse of discretion." ***Commonwealth v. Moto***, 23 A.3d 989, 993 (Pa. 2011).

In ***Moto***, our Supreme Court outlined how a trial court should analyze an expungement petition:

> Judicial analysis and evaluation of a petition to expunge depend upon the manner of disposition of the charges against the petitioner. When an individual has been convicted of the offenses charged, then expungement of criminal history records may be granted only under very limited circumstances that are set forth by statute. 18 Pa.C.S. § 9122. When a petitioner has been tried and acquitted of the offenses charged, we have held that the petitioner is "automatically entitled to the expungement of his arrest record." ***Commonwealth v. D.M.***, 695 A.2d 770, 772-73 (Pa. 1997). When a prosecution has been terminated without conviction or acquittal, for reasons such as *nolle prosse* of the charges or the defendant's successful complete of an accelerated rehabilitative disposition program ("ARD"), then this Court has required the trial court to "balance the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records." ***Commonwealth v. Wexler***, 431 A.2d 877, 879 (Pa. 1981).

To aid courts in applying the balancing test for expungement, we also adopted in **Wexler** the following non-exhaustive list of factors that the court should consider:

These factors include [1] the strength of the Commonwealth's case against the petitioner, [2] the reasons the Commonwealth gives for wishing to retain the records, [3] the petitioner's age, criminal record, and employment history, [4] the length of time that has elapsed between the arrest and the petition to expunge, and [5] the specific adverse consequences the petitioner may endure should expunction be denied.

**Wexler**, *supra*, at 879 (citation omitted).

We have emphasized that in applying the balancing test and considering the above factors, the court must analyze the particular, specific facts of the case before it.

*Id.* at 993-94 (some citations omitted; some citations modified).

When a case has been terminated without a conviction, the **Wexler** factors should apply. **Commonwealth v. V.G.**, 9 A.3d 222, 227 (Pa. Super. 2010). However, when charges are *nolle prossed*, as here, the reasons for the Commonwealth's request for *nolle pros* become relevant to the trial court's analysis. When the Commonwealth requests *nolle pros* because it was unable to meet its burden of proof beyond a reasonable doubt as to the underlying charges, the Commonwealth bears the burden of proving why expungement should not be granted. **Id.** at 225 (discussing **Wexler**). However, if charges are *nolle prossed* or dismissed as part of a plea agreement, the petitioner generally is not entitled to expungement under the **Wexler** factors. **Id.** (citing **Commonwealth v. Lutz**, 788 A.2d 993 (Pa. Super. 2001)). This is because the record no longer would reflect the

agreement between the petitioner and the Commonwealth and the petitioner would receive more than he or she bargained for in the plea agreement. *Id.* at 226.

Here, Park argues that the endangering the welfare of a child ("EWOC") charge was *nolle prossed* because "the Commonwealth decided there was insufficient evidence to support the charges." Park's Brief at 5. Because Park believed that the Commonwealth admitted that it could not prove EWOC, Park asserts that the Commonwealth bore the burden to demonstrate why the record should not be expunged. Park argues that the Commonwealth presented nothing and, therefore, could not have met its burden to prove that the *Wexler* factors weighed in favor of denying expungement. *Id.* at 6-8.

Park is incorrect that the Commonwealth admitted the evidence was insufficient to prove EWOC; the Commonwealth steadfastly asserted that the charge was *nolle prossed* as part of a plea agreement. However, the trial court found that, because the Commonwealth did not present the testimony of the prosecutor who struck the plea agreement, it did not prove that the charge was *nolle prossed* as part of the plea. T.C.O. at 7. The trial court determined that, if the *nolle pros* was not due to a plea agreement, then it was bound to consider the *Wexler* factors. *Id.*

We agree that the trial court had to apply the *Wexler* factors. Without a conviction or an acquittal, the *Wexler* factors control the outcome of an expungement petition. *See V.G.*, *supra*. Here, the trial court

concluded that the expungement was not part of a plea agreement. While the docket indicated this was a negotiated plea, the details of the plea are not of record. It is not clear whether the negotiated plea related to the charges, the sentence, or both. Without record evidence, the trial court did not abuse its discretion in concluding that this was not a case in which the EWOC charge was *nolle prossed* as part of a plea agreement.

Further, the trial court did not abuse it discretion in weighing those factors. The trial court first considered the weight of the Commonwealth's case. Based upon Officer Jones' proposed testimony, the trial court found it likely that Park would have been convicted of EWOC because Park would have been aware that leaving a sixteen-month-old child in a parked car was dangerous and because she failed to protect the child by doing so. T.C.O. at 8-10. The trial court also found that the Commonwealth provided strong reasons for retaining the records, namely that Park's crime involved a child and her current and prospective employment also involves, or potentially involves children, and that Park's children are still young and there is the possibility of a recurrence of EWOC. *Id.* at 10-11. The trial court did not find Park's age to be a relevant factor. Park's subsequent clean record was unconvincing, given the short time between the plea and the expungement petition. Although the court gave Park credit for maintaining her employment, it thought that, because her employment involved children, it weighed in favor of denying the petition. *Id.* at 11-12.

Citing **Commonwealth v. Persia**, 673 A.2d 969, 972 (Pa. Super. 1997), in which the relatively short sixteen months between the filing of charges and the expungement petition was deemed a reason to retain the record, the trial court found that the eighteen months in this case between the charges and the petition for expungement weighed against expungement. T.C.O. at 12. Finally, the court considered the adverse consequences that Park cited. Park identified two specific consequences: an inability to obtain citizenship and an inability to obtain employment as a medical interpreter because the employer required a clean record. The trial court determined that the employment issue did not weigh in favor of expungement because Park averred that she had to have a clean record to obtain this employment and, even if the EWOC charge were expunged, her summary charge would still remain on her record. As to the citizenship issue, the trial court found that Park offered no support for her statement that an arrest would preclude citizenship and also that, even with expungement, her record would not be clean.

Considering all this, the trial court concluded that the factors weighed in favor of the Commonwealth's interest in retaining the record instead of Park's "right to be free from the harm attendant to maintenance of the arrest record." **Moto**, 23 A.3d at 993. As in **Moto**, where the Supreme Court affirmed the trial court, "the trial court expressly made clear both its correct understanding of **Wexler**'s balancing test, as well as its reasons for

denying [Park's] petition. *Id.* at 996. Therefore, the trial court did not abuse its discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2015