J-S54009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT GEYER, | |
| Appellant | No. 1149 WDA 2015 |

Appeal from the PCRA Order Entered July 14, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013412-2010

BEFORE:  BENDER, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED SEPTEMBER 27, 2016**

Appellant, Robert Geyer, appeals from the order denying, as untimely, his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.   Appellant argues that his petition meets the timeliness exception to the PCRA's jurisdictional time-bar set forth in Section 9545(b)(1)(iii) (retroactive application of new holdings).   Alternatively, he contends that the timeliness requirements of the PCRA violate his due process and equal protection rights.  After careful review, we affirm.

On November 18, 2009, Appellant pled guilty to sexual assault, and was sentenced to 364–728 days' incarceration and a consecutive term of 5 years' probation.   Appellant violated his probation and, as a result, on February 4, 2014, he was resentenced to 3-6 years' incarceration with a consecutive term of 2 years' probation.   Appellant's appeal from that

sentence was affirmed on May 22, 2015. *See Commonwealth v. Geyer*, 122 A.3d 456 (Pa. Super. 2015) (unpublished memorandum).

The instant appeal stems from Appellant's conviction for a matter related to his 2009 conviction. On March 2, 2011, Appellant pled guilty to 18 Pa.C.S. § 4915(a)(1) ("Failure to comply with registration of sexual offenders requirements"), and was sentenced thereunder to 3-6 months' incarceration and a consecutive term of 3 years' probation. That specific offense became law as part of a single legislative act, Act 152 of 2004. Section 4915(a)(1) was part of a series of statutes ("Megan's Law III") amending Pennsylvania's prior sex offender registration and reporting requirements ("Megan's Law II"), which made up just one portion of Act 152 (a sprawling piece of legislation that contained numerous provisions wholly unrelated to the regulation and supervision of sex offenders). On December 16, 2013, our Supreme Court struck down Act 152 as having violated the Pennsylvania Constitution's single subject rule. *Commonwealth v. Neiman*, 84 A.3d 603 (Pa. 2013). Importantly, the *Neiman* Court also held that the portions of Act 152 known as Megan's Law III were not severable. *Id.* at 613-16. Thus, functionally speaking, the *Neiman* Court effectively struck down Megan's Law III and, consequently, the specific statutory basis for Appellant's 2011 conviction.

On February 4, 2014, Appellant was found to have violated the terms of the probation imposed for his 2011 failure-to-register offense. Consequently, Appellant was resentenced to 2-6 years' imprisonment, set to

run consecutive to the term he was serving for the underlying sexual assault offense.  Appellant did not file post-sentence motions or a timely direct appeal.

On April 28, 2014, Appellant filed a *pro se* PCRA petition, raising claims concerning both his sexual assault and failure-to-register offenses. Counsel was appointed and filed an amended PCRA petition on Appellant's behalf, in which Appellant abandoned the claims pertaining to his sexual assault conviction.  By order dated July 14, 2015, the PCRA court dismissed the petition without a hearing.  Appellant filed a timely appeal from that order, as well as a timely, court-ordered Pa.R.A.P. 1925(b) statement.  The PCRA court issued its Rule 1925(a) opinion on November 13, 2015.

Appellant now presents the following questions for our review:

[1.] Does the timeliness exception in § 9545(b)(1)(iii) of the PCRA, pertaining to retroactive application of new holdings, apply to the holding in … *Neiman* …, invalidating the enactment of Megan's Law III?

[2.] Does the denial of a remedy for a conviction by a court lacking subject matter jurisdiction violate federal and state due process guarantees and the Remedies Clause of the Pennsylvania Constitution?

[3.] Does limiting eligibility for relief to defendants whose convictions became final in the year preceding *Neiman* violate federal and state equal protection guarantees?

[4.] Does making an express holding of retroactivity a prerequisite to invocation of § 9545(b)(1)(iii) violate federal and state due process guarantees and/or the Remedies Clause?

Appellant's Brief at 2.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. *Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

> **(b) Time for filing petition.--**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
>> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>>
>> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>>
>> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant does not claim that his petition is timely under the terms of the statute. Indeed, Appellant was initially sentenced on March 2, 2011, and because he did not file post-sentence motions or a direct appeal, his sentence became final on April 2, 2011. *See* Pa.R.A.P. 903(a) (stating "the notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken"). Thus, pursuant to Section 9545(b)(1), Appellant had until April 2, 2012, to file a timely PCRA petition. Thus, his 2014 petition is untimely and, in order to overcome the jurisdictional time-bar of the PCRA, Appellant must avail himself of one of the aforementioned timeliness exceptions.

In his first issue, Appellant asserts that his claim for relief under the *Neiman* decision satisfies Section 9545(b)(1)(iii) (hereinafter, "the retroactivity exception").

> Subsection (iii) of Section 9545 has two requirements. First, it provides that the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or this court after the time provided in this section. Second, it provides that the right "has been held" by "that court" to apply retroactively. Thus, a petitioner must prove that there is a "new" constitutional right and that the right "has been held" by that court to apply retroactively. The language "has been held" is in the past tense. These words mean that the action has already occurred, *i.e.*, "that court" has already held the new constitutional right to be retroactive to cases on collateral review. By employing the past tense in writing this provision,

the legislature clearly intended that the right was already recognized at the time the petition was filed.

***Commonwealth v. Abdul-Salaam***, 812 A.2d 497, 501 (Pa. 2002).

While Appellant does argue that ***Neiman*** *should* be held to apply retroactively, Appellant's Brief at 12-15, Appellant acknowledges that "the question of the extent of retroactivity of ***Neiman*** … has not yet been explicitly answered." ***Id.*** at 12. This admission, confirmed by our own research, is fatal to Appellant's first claim. Our Supreme Court has not held that ***Neiman*** applies retroactively; thus, Appellant cannot satisfy the "has been held" language of Section 9545(b)(1)(iii).

Appellant's remaining claims challenge the PCRA's timeliness requirements as violative of the Due Process Clauses of both the state and federal constitutions, as well as the Remedies Clause of the state constitution. Appellant only cites to a single case in the course of making his due process argument, contrasting his situation with the litigant in ***Commonwealth v. Turner***, 80 A.3d 754 (Pa. 2013). Specifically, Appellant contends that "[i]f the claim in this case is untimely under the PCRA, the PCRA is fundamentally inadequate to vindicate Petitioner's liberty interest." Appellant's Brief at 18.

> The Fourteenth Amendment provides in part: "nor shall any State deprive any person of life, liberty, or property, without due process of law," and protects "the individual against arbitrary action of government[.]" ***Kentucky Dept. of Corr. v. Thompson***, 490 U.S. 454, 459–60 … (1989) (internal citations omitted). Similarly, Article I, Section 9 of the Pennsylvania Constitution guarantees a criminal defendant the right to due process of law. These two due process provisions are largely

- 6 -

coextensive. ***Commonwealth v. Moto***, 611 Pa. 95, 23 A.3d 989, 1001 (2011). The constitutional right to due process guarantees more than fair process, covering a substantive sphere as well, "barring certain government actions regardless of the fairness of the procedures used to implement them." ***County of Sacramento v. Lewis***, 523 U.S. 833, 840 … (1998) (citing ***Daniels v. Williams***, 474 U.S. 327 … (1986)). "Due process" is not susceptible to precise definition; rather, the phrase expresses the requirement of "fundamental fairness," a requisite "whose meaning can be as opaque as its importance is lofty." ***Lassiter v. Dep't of Soc. Serv. of Durham County***, 452 U.S. 18, 24–25 … (1981).

In terms of procedural due process, government is prohibited from depriving individuals of life, liberty, or property, unless it provides the process that is due. While not capable of an exact definition, the basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. [***Commonwealth v.*** ]***Wright***, 961 A.2d [119,] [] 132 [(Pa. 2008)]; ***Commonwealth v. Thompson***, … 281 A.2d 856, 858 ([Pa.] 1971). Thus, courts examine procedural due process questions in two steps: the first asks whether there is a life, liberty, or property interest that the state has interfered with; and the second examines whether the procedures attendant to that deprivation were constitutionally sufficient. ***Thompson***, 490 U.S. at 460 ….

In the collateral review context, the United States Supreme Court has held that although "states have no constitutional obligation to provide a means for collaterally attacking convictions," ***Commonwealth v. Haag***, … 809 A.2d 271, 283 ([Pa.] 2002) (citing [***Pennsylvania v.***] ***Finley***, 481 U.S. [551,] [] 557 [1987], …), if they do, "then such procedures must comport with the fundamental fairness mandated by the Due Process Clause." ***Id.***; ***Finley***, 481 U.S. at 557, …. In this regard, states have "substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review." ***Finley***, 481 U.S. at 559 …. When a state choses to offer help to those seeking relief from convictions and custody, due process does not "dictat[e] the exact form such assistance must assume." [***Dist. Attorney's Office For the Third Judicial Dist. v.***] ***Osborne***, 557 U.S. [52,] [] 69 [2009] … (citing ***Finley***, 481 U.S. at 559 …). Moreover, states need not provide post-conviction petitioners with "the full

panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position-at trial and on first appeal as of right." *Finley*, 481 U.S. at 552 …. Indeed, the United States Supreme Court has stated that post-conviction petitioners "have only a limited interest in post-conviction relief." *Osborne*, 557 U.S. at 69 …. To deny due process, the complained-of aspect of the state post-conviction procedures must be "fundamentally inadequate to vindicate" the defendant's liberty interest, and must offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or transgress "any recognized principle of fundamental fairness in operation." *Osborne*, 557 U.S. at 69 … (internal citations omitted).

*Turner*, 80 A.3d at 763–64.

In *Turner*, our Supreme Court rejected a challenge to the constitutionality, on due process grounds, of the PCRA's "currently serving a sentence" requirement, 42 Pa.C.S. § 9543(a)(1)(i) (requiring a petitioner, "to be eligible for relief" under the PCRA, to be "currently serving a sentence of imprisonment, probation or parole for the crime"). After failing to file a direct appeal, Turner filed a timely PCRA petition raising claims alleging the ineffective assistance of counsel (IAC). During the course of litigating the petition in the PCRA court, Turner completed her two-year probationary sentence. The Commonwealth filed a motion to dismiss based on Section 9543(a)(1)(i), and Turner's reply claimed that application of that provision would deprive her of due process (regarding her right to raise an IAC claim under the 6th Amendment). The PCRA court rejected the Commonwealth's motion to dismiss, ruling that Section 9543(a)(1)(i) violated Turner's due

process rights. The Commonwealth directly appealed that decision to our Supreme Court.

Applying the two part test from **Thompson**, the **Turner** Court held that due process had not been violated because the first prong had not been met. The **Turner** Court "agree[d] with the Commonwealth that due process does not require the legislature to continue to provide collateral review when the offender is no longer serving a sentence." **Turner**, 80 A.3d at 765. More specifically, the **Turner** Court held:

> Because individuals who are not serving a state sentence have no liberty interest in and therefore no due process right to collateral review of that sentence, the statutory limitation of collateral review to individuals serving a sentence of imprisonment, probation, or parole is consistent with the due process prerequisite of a protected liberty interest. 42 Pa.C.S. § 9543(a)(1)(i). Of course, the legislature was free to extend a statutory right of collateral review to individuals like Petitioner who had completed their sentence and, had they done so, they would be constitutionally obligated to ensure that those rights were impacted only in accord with due process. **See Evitts v. Lucey**, 469 U.S. 387, 401 … (1985) ("when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause"); **Haag**, 809 A.2d at 282–83 (providing that although a PCRA petitioner does not have a Sixth Amendment constitutional right to counsel during collateral review, the Commonwealth, by way of procedural rule, provided for the appointment of counsel during a first petition for post-conviction relief, thereby creating a rule-based right to the effective assistance of counsel). However, the legislature did not do so. Rather, the General Assembly, through the PCRA, excluded from collateral review those individuals who were no longer subject to a state sentence, thereby limiting the statutory right of collateral review to those whose liberty was constrained.

- 9 -

*Turner*, 80 A.3d at 766. Thus, the *Turner* Court essentially held that, because there is no constitutional right to collateral review (for those with or without liberty interests at stake), the legislature was free to limit whatever collateral review was granted by statute without violating due process.

Instantly, Appellant argues that his case is distinguishable from *Turner* because he is still serving a sentence and, therefore, he still has a liberty interest at stake. However, while Appellant's case does deviate from *Turner* in that way, his argument overlooks the broader holding in *Turner*, which is that the legislature was free to set the criteria for eligibility under the PCRA, because collateral review is not itself a constitutional right, but a statutory one. In this regard, Appellant fails to develop any argument as to why the legislature can demand a liberty interest as a gateway to eligibility under the PCRA, but cannot do the same with the timeliness requirements.

Furthermore, as mentioned in *Turner*, our Supreme Court has already determined that, "in the context of the jurisdictional timeliness restrictions on the right to bring a PCRA petition, *see* 42 Pa.C.S. § 9545(b), the constitutional nature of a collateral claim does not overcome the legislature's restrictions on collateral review." *Turner*, 80 A.3d at 767. In this regard, Appellant is virtually making that very claim: that the nature of the underlying collateral issue (his right not to be convicted under a voided statute) should overcome the timeliness requirements. To the extent that Appellant is superimposing a constitutional claim (due process) on top of the underlying collateral issue in order to circumvent (or render invalid) the

PCRA's timeliness restrictions, our Supreme Court has rejected a similar argument with regard to superimposed IAC claims. *See Commonwealth v. Lark*, 746 A.2d 585 (Pa. 2000) (holding that the Court could not reach the petitioner's *Batson*[1]-based claim in a untimely PCRA petition, even if prior counsel provided IAC by waiving the claim on direct appeal and during timely collateral review).

In sum, we conclude that Appellant has simply failed to adequately develop a cogent argument that the PCRA's timeliness requirement violates his due process rights. Appellant's argument critically fails to address precedent establishing a lack of a right to collateral review beyond what the PCRA statute's eligibility criteria actually provides and, therefore, his claim must fail.

Next, Appellant claims that the PCRA's timeliness requirements violate the Remedies Clause of the Pennsylvania Constitution, which provides as follows: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST. art. I, § 26. Appellant's two-page argument cites this constitutional provision, then a quote from a case expressing the general principle that a state constitution

_____

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986). In *Batson*, the Supreme Court of the United States held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids a prosecutor from challenging potential jurors solely on account of their race.

*may* provide greater constitutional protection than that required by the federal constitution.[2] Those boilerplate citations are followed by exactly two sentences of argument, lacking any accompanying citations, and baldly pronouncing that disparities in the retroactive application of new decisions are constitutionally unacceptable "with respect to rulings that go to subject matter jurisdiction." Appellant's Brief at 20.

This Court had held that the failure to develop a meaningful analysis in support of a claim is grounds for waiver of that claim. **See Commonwealth v. Antidormi**, 84 A.3d 736, 754 (Pa. Super. 2014) (citing Pa.R.A.P. 2119(a), **Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009), and **Commonwealth v. McLaurin**, 45 A.3d 1131, 1139 (Pa. Super. 2012)). The boilerplate authorities cited by Appellant utterly fail to support his conclusion, which is stated without any meaningful analysis. Accordingly, we find this aspect of Appellant's challenge to the constitutionality of the PCRA's timeliness requirements waived.

In Appellant's final claim, he argues that too few of those individuals subjected to the now-invalid provisions of Megan's Law III can benefit from

_____

[2] Appellant quotes from **Fischer v. Department of Public Welfare**, 502 A.2d 114, 121 (Pa. 1985), a case involving an equal protection challenge to laws restricting state expenditures on abortions. Apart from the recitation of the most general principles of constitutional law, the decision and analysis in **Fisher** has virtually no relationship to the matter at hand - the constitutionality of the PCRA's timeliness requirements. Indeed, Appellant does not even attempt to draw an analogy to the facts or specific legal issues discussed in that case.

the **Neiman** decision, as "[t]he period during which such a defendant could file a PCRA petition *without* relying on § 9545(b)(1)(iii) has now expired." Appellant's Brief at 21 (emphasis in original). Appellant goes on to argue "that it is still *possible* that a presently pending PCRA proceeding in such a case will reach the Supreme Court," but claims that "it is also possible that this will *not* happen." **Id.** (emphasis in original). Thus, Appellant essentially asserts that that the requirements of Section 9545(b)(1)(iii) can never be met, because the Supreme Court will never, or will likely never, have the opportunity to decide whether **Neiman** should operate retroactivity.

Appellant's argument, in addition to lacking any foundation in cited case law, fails on its face. First, the **Neiman** Court itself could have held that the decision applies retroactively, but it did not do so. It is not at all clear to this Court that this was a mere oversight by the **Neiman** Court rather than an intentional omission, and Appellant provides no argument to that effect in any event.[3] Thus, it is not correct to suggest that the Supreme

_____

[3] It is possible that the **Neiman** Court believed the decision's non-retroactivity to be patently obvious; or, as the Commonwealth argues, irrelevant with respect to Appellant's specific claims, because Appellant's conviction under Megan's Law III was identical to the failure-to-report provisions of the prior version of Megan's Law which Megan's Law III replaced, and which must therefore have remained in effect when Megan's Law III was voided. Thus, under that view, at no time did Appellant's conduct cease being a crime. If Appellant's conduct was always a crime, and, specifically, always the same crime (differing only in the place it appeared in the statute), the question of **Neiman**'s retroactivity would be purely academic, as Appellant would not be entitled to relief if he has

*(Footnote Continued Next Page)*

- 13 -

Court would never have the opportunity to address *Neiman*'s retroactivity; at best, Appellant questions the Supreme Court's ability to *revisit* the issue.

Second, Appellant essentially admits that there is at least the possibility that the issue of *Neiman*'s retroactivity can still be decided by our Supreme Court. Accordingly, the notion that it is unlikely to be reached at all is purely speculative. Third, restrictions on collateral review in Pennsylvania exclude Appellant from raising his *Neiman* claim *on collateral review*. Notably, Appellant did not attempt to raise this claim on direct appeal from his current sentence of incarceration, imposed on February 4, 2014, nearly two months after *Neiman* was issued. While other procedural hurdles or restrictions may have confronted him in that venue, the PCRA's timeliness requirements are not among them. Thus, it is misleading for Appellant to claim that he will never have the opportunity to raise his claim because of the PCRA's timeliness requirement and its narrow exceptions. He had an opportunity to raise his claims on direct review. Therefore, he cannot claim that the PCRA's criteria for timeliness were the only basis for his inability to challenge his conviction.

Finally, Appellant presents virtually no arguments to overcome the state's well-established interest in the finality of its criminal judgments. As our Supreme Court has declared:

*(Footnote Continued)* ───────────────

effectively suffered no harm by being convicted under one statute rather than the other.

There is absolutely no doubt that there is an enduring societal interest in the finality of criminal proceedings. Indeed, "[o]ne of the law's very objects is the finality of its judgments." **McCleskey v. Zant**, 499 U.S. 467, 491, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). "Finality is essential to both the retributive and the deterrent functions of criminal law for neither innocence nor just punishment can be vindicated until the final judgment is known." … **Haag**, … 809 A.2d … [at] 287 (Castille, J., concurring) (quoting **Calderon v. Thompson**, 523 U.S. 538, 555, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)) (internal quotation marks omitted); **see also Teague v. Lane,** 489 U.S. 288, 309, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) ("Without finality, the criminal law is deprived of much of its deterrent effect."). That societal interest in finality encompasses a concern for the victims of crime and their families. **See Haag**, 809 A.2d at 287 (Castille, J., concurring) (quoting **Calderon**, 523 U.S. at 556, 118 S.Ct. 1489) ("[I]t is only with real finality that the victims of crime can move forward knowing the moral judgment of the State will be carried out."). This compelling interest in finality that is shared both by society and the state absolutely requires, to put it simply, that "[a]t some point litigation must come to an end," **Commonwealth v. Peterkin**, 554 Pa. 547, 722 A.2d 638, 643 (1998).

**Commonwealth v. Sam**, 952 A.2d 565, 576–77 (Pa. 2008).

Appellant's liberty interest is, of course, of immense importance. However, Appellant's failure to address the balance between that interest and Commonwealth's interest in finality speaks to the weakness of his claim. Our Supreme Court and the Supreme Court of the United States have routinely found that liberty interests must, over time, yield to the collective interest in finality, and that finality is essential to the successful operation of our criminal justice system. Although Appellant does not specifically endeavor to draw the line where that balance of interests shifts, the natural consequence of his arguments suggest that no such line exists, for he argues as if his liberty interest is paramount. We cannot disregard the

Commonwealth's well-established interest in finality in such a manner, even if we were so inclined. For each these reasons, we find Appellant's final claim lacking in merit.

Order **affirmed**.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/27/2016