J. S93007/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
LATASHA ROBINSON, :
:
Appellant : No. 3433 EDA 2015

Appeal from the Judgment of Sentence July 10, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0004971-2013

BEFORE: DUBOW, SOLANO, AND PLATT, JJ.[*]

MEMORANDUM BY DUBOW, J.: **FILED JANUARY 25, 2017**

Appellant, Latasha Robinson, appeals from the Judgment of Sentence

entered by the Philadelphia County Court of Common Pleas following her

jury trial convictions of Unlawful Contact with a Minor, Corruption of a Minor,

and Aggravated Indecent Assault of a Child.[1]  We affirm.

The trial court stated the relevant facts in its Pa.R.A.P. 1925(a)

Opinion as follows:

> On February 18, 2013, Police Officer Arnaldo Santos responded
> to a call at 416 North Grove Street in the city and county of
> Philadelphia, PA.  Officer Santos arrived at the scene and met
> with the complainant's mother who was very upset.  The
> complainant's mother told Officer Santos that she picked the
> complainant up at the complainant's grandmother's house.

---

[*] Retired Senior Judge Assigned to the Superior Court.

[1] 18 Pa.C.S. § 6318(a)(1); 18 Pa.C.S. § 6301(a)(1)(i); and 18 Pa.C.S. §
3125(b), respectively.

According to the complainant, she was touched in her private area. On the way home from her grandmother's house, the complainant urinated on herself. Her mother saw blood on the complainant's underwear and called the police. The complainant's mother turned the underwear over to the officer. When they arrived at the hospital, the officer gave the underwear to the detectives.

The complainant was three years old at the time of the incident. The complainant testified that on the day of the incident she was downstairs laying on the couch with the [Appellant]. [Appellant] touched her with her nails between her legs, an area the complainant refers to as her "coochie" or "coo-coo." The complainant also said that she saw [Appellant's] butt.

The complainant's mother testified that she picked her daughter up from her mother's house. Her mother lives there along with [Appellant], her girlfriend of about eleven years. When she arrived at her mother's house, she notice[d] that her daughter was not her usual self. Typically, the complainant is very happy to see her mother but she noticed that the complainant was acting differently. The complainant told her mother that [Appellant] "hurt my coo-coo." The complainant then repeated that [Appellant] "put her finger in my coo-coo." At first, the complainant's mother and grandmother did not believe her. On the way home, she asked the complainant about what she said at the house. The complainant told her [Appellant] "touched my coo-coo." The complainant told her [Appellant] laid her back, put her finger in her vagina, and put her boobs in her face. The complainant also urinated on herself on the way home. When her mother changed her pants, she saw blood. She then called her mother and told her that [Appellant] really must have touched the complainant and then she called the police.

The complainant was taken by an ambulance to the emergency room at the Children's Hospital of Philadelphia ("CHOP"), where she was examined by Dr. Mercedes Blackstone. The complainant was admitted to the hospital because she had an acuity score of two from a scale of one to five. The complainant received a full examination. Dr. Blackstone found a very small amount of blood in the area of the posterior forcia, which is the interior part of the vagina. Also, a nurse practitioner documented a small amount of bleeding with urination.

A DNA analysis was performed by Lisette Vega, a forensic science expert from the Philadelphia Police Department Criminalistics Unit, DNA laboratory. [Vega] analyzed a swab from inside the complainant's crotch, a vulvar swab, an oral swab, a perineal swab, and a reference blood sample from the complainant as well as a reference blood sample from [Appellant]. A touch DNA sample from inside of the complainant's crotch matched the complainant and an unknown individual. [Appellant] was excluded as a contributor. The unknown individual was a female. The other swabs from inside the crotch, the vulvar swab, and the oral swab matched the complainant. However, [Vega] testified that it is possible that if the complainant wiped herself she may have removed all or some of the DNA from the area.

*     *     *

On April 17, 2015, a jury found [Appellant] guilty of [U]nlawful [C]ontact with a [M]inor, [C]orruption of a [M]inor, and [A]ggravated [I]ndecent [A]ssault of a [C]hild. The court deferred sentencing for a pre-sentence investigation and an assessment by the Sexual Offenders Assessment Board [] pursuant to 42 Pa.C.S. § 9799.24 to determine if [Appellant] is a sexually violent predator. [The court did not find Appellant to be a Sexually Violent Predator.] On July 10, 2015, the court sentenced [Appellant] to [an aggregate term of] five and a half to eleven years in prison to be followed by a period of four years of sex offender probation. [Appellant] filed a Post Sentence Motion on July 10, 2015[, which was denied] on November 3, 2015.

Trial Court Opinion, 4/20/16, at 1-4 (citations omitted).

Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

[I.] Whether the evidence was insufficient to convict Appellant of Unlawful Contact with a Minor, 18 Pa.C.S.[] § 6318(a)(1), Corruption of a Minor, 18 Pa.C.S.[] § 6301(a)(1)(i), and Aggravated Indecent Assault of a Child, 18 Pa.C.S.[] § 3125(b)?

- 3 -

> [II.] Whether the weight of the evidence is against Appellant's convictions for Unlawful Contact with a Minor, 18 Pa.C.S.[] § 6318(a)(1), Corruption of a Minor, 18 Pa.C.S.[] § 6301(a)(1)(i), and Aggravated Indecent Assault of a Child, 18 Pa.C.S.[] § 3125(b)?

Appellant's Brief at 7 (reordered for convenience).

In her first issue, Appellant avers that the evidence is insufficient to sustain her convictions because: (1) "the Commonwealth failed to prove that Appellant ever made any physical contact with [c]omplainant on the day in question[;]" and (2) "Appellant was excluded as [c]omplainant's assailant." Appellant's Brief at 15-16, 21-24.

We review challenges to the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014). The trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Id*. at 40. Moreover, the trier of fact may base a conviction solely on circumstantial evidence. *Id*. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for that of the fact-finder. *Id*.

Section 6318 of the Crimes Code defines Unlawful Contact with a Minor, in relevant part, as follows:

**§ 6318. Unlawful contact with minor**

**(a) Offense defined.--**A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S. § 6318(a)(1). The statute defines "Contacts" as:

Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S. § 6318(c).

Section 6301 of the Crimes Code defines Corruption of Minors, in relevant part, as follows:

**§ 6301. Corruption of minors**

**(a) Offense defined.--**

(1) (i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

(ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301.

Actions that tend to corrupt the morals of a minor are those that "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." *Commonwealth v. Snyder*, 870 A.2d 336, 351 (Pa. Super. 2005) (quotation marks and citation omitted). Thus, the scope of the corruption statute is extremely broad, encompassing conduct that far exceeds that which is proscribed by Chapter 31 of Title 18. 18 Pa.C.S. § 6301(a)(1)(i). The corruption statute also effectively provides a distinct offense and a separate penalty for sexual offenses committed against children. 18 Pa.C.S. § 6301(a)(1)(ii).

Section 3125 of the Crimes Code, one of the provisions in Chapter 31, defines Aggravated Indecent Assault of a Child, in relevant part, as follows:

**§ 3125. Aggravated indecent assault**

**(a) Offenses defined.--**Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

(1) the person does so without the complainant's consent;

(2) the person does so by forcible compulsion;

(3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

(4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring;

(5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance;

(6) the complainant suffers from a mental disability which renders him or her incapable of consent;

*    *    *

**(b) Aggravated indecent assault of a child.--**A person commits aggravated indecent assault of a child when the person violates subsection (a)(1), (2), (3), (4), (5) or (6) and the complainant is less than 13 years of age.

18 Pa.C.S. § 3125.

The Honorable Donna M. Woelpper, who presided over the jury trial, authored a comprehensive, thorough, and well-reasoned opinion, citing to the record and relevant case law in addressing Appellant's claims on appeal. After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's opinion. *See* Trial Court Opinion at 4-8 (concluding that there was sufficient evidence to support Appellant's convictions because the jury found credible the victim's testimony that Appellant touched the victim's vagina and caused injuries, which was corroborated by other testimony and physical evidence of a sexual assault;

Appellant's arguments merely isolate certain portions of the victim's testimony while ignoring others).

Viewing the totality of the evidence in the light most favorable to the Commonwealth as the verdict winner, it is clear that the Commonwealth proved each element of the offenses. Appellant's sufficiency challenge, thus, fails.

Appellant next avers that the jury's verdict was against the weight of the evidence because: (1) "the Commonwealth failed to establish a time frame when Appellant had an opportunity to commit the alleged" crime; (2) the victim's mother "had a clear bias against Appellant[;]" and (3) "DNA evidence unequivocally excluded Appellant as [the victim's] assailant." Appellant's Brief at 15, 17-21.

When considering challenges to the weight of the evidence, we apply the following precepts:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses.
>
> Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the

evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Talbert***, 129 A.3d 536, 545-46 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016) (quotation marks and citations omitted).

Resolving contradictory testimony and questions of credibility are matters for the finder of fact. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). Further, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." ***Talbert, supra*** at 546 (quotation marks and citation omitted). It is well-settled that we cannot substitute our judgment for that of the trier of fact. ***Id***.

The trial court addressed Appellant's weight of the evidence challenge as follows:

> On appeal [Appellant] asserts that the verdict is against the weight of the evidence because the DNA evidence excluded the [Appellant] as a suspect. As discussed at length above, the jury heard from numerous witnesses and was able to assess the credibility of the witnesses. Although [Appellant's] testimony contradicted the testimony of the complainant and the DNA did not match [Appellant], the jury had the full opportunity to evaluate the substance of the testimony to make the relevant factual determinations. Additionally, "where an appellant argues that physical evidence is inconsistent with a victim's testimony, but that evidence does not necessarily exculpate him [or her], the fact-finder may entertain a defendant's alternative theory and reasonably reject it. In such instances, we will not substitute the fact-finder's judgment with our own." [***Commonwealth v. Wall***, 953 A.2d 581, 586 (Pa. Super.

> 2008)]; [s]ee also *Commonwealth v. Burns*, 988 A.2d 684, 695 (Pa. Super. 2009) (the exclusion of a defendant as a DNA contributor does not mandate a finding of not guilty). In *Wall*[,] the court rejected the defendant's weight of the evidence claim where DNA testing excluded Wall's sperm as a match. The court concluded [that] while DNA evidence may have been an alternative theory[,] it did not require the conclusion that Wall did not rape the victim.
>
> Here, the jury heard testimony from the complainant who testified credibly that [Appellant] touched her "coo-coo" as well as the complainant's mother who testified that she saw blood between the complainant's legs after she urinated. The jury also heard testimony that the DNA evidence did not match that of the [Appellant]. However, the Commonwealth's laboratory expert presented a reasonable explanation that the DNA could have been removed when the complainant wiped herself after urinating. The jury had the full opportunity to hear [Appellant's] alternative theory and assess its credibility, and chose to reject it. Therefore, this court finds no merit in [Appellant's] challenge to the weight of the evidence presented at trial as it does not "shock one's sense of justice."

Trial Court Opinion at 8-9 (some citations and quotation marks omitted). We agree with the trial court's assessment.

Appellant essentially asks us to reassess the credibility of the victim and reweigh the testimony and evidence presented at trial. Appellant's Brief at 17-21. We cannot and will not do so. The jury found credible the victim's testimony that Appellant touched the victim's vagina and caused injuries, which was corroborated by other testimony and physical evidence of a sexual assault. Thus, the verdict was not so contrary to the evidence as to shock the court's conscience, and the trial court properly denied Appellant's weight of the evidence claim.

- 10 -

J. S93007/16

The parties are instructed to attach a copy of the trial court's April 20, 2016 Opinion to all future filings.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2017



FILED

APR 20 2016

Criminal Appeals Unit
First Judicial District of PA

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF
PENNSYLVANIA
:     CP-51-CR-0004971-2013
:

CP-51-CR-0004971-2013 Comm. v. Robinson, Latasha
Opinion

7435993281

v.                           3433 EDA 2015

:
:
LATASHA ROBINSON        :

**OPINION**

WOELPPER, J.                                      APRIL 20, 2016

I.     PROCEDURAL HISTORY

On April 17, 2015, a jury found Latasha Robinson ("defendant") guilty of unlawful contact with a minor,[1] corruption of a minor,[2] and aggravated indecent assault of a child.[3] The court deferred sentencing for a pre-sentence investigation and an assessment by the Sexual Offenders Assessment Board ("the SOAB") pursuant to 42 Pa.C.S. § 9799.24 to determine if the defendant is a sexually violent predator.[4] On July 10, 2015, the court sentenced the defendant to five and a half to eleven years in prison to be followed by a period of four years of sex offender probation.[5]

---

[1] 18 § 6318 § A1
[2] 18 § 6301 § A1i
[3] 18 § 3125 § B
[4] The court did not find the defendant to be a Sexually Violent Predator.
[5] The court sentenced defendant to five and a half to eleven years in prison for the aggravated indecent assault of a minor charge. The defendant was sentenced to four years of sex offender probation on the unlawful contact of a minor charge to run consecutive to the prison term. On the corruption of a minor charge, the defendant was sentence to four years of probation to run concurrent with the previous probation term.

1

The defendant filed a Post Sentence Motion on July 10, 2015. This court denied the motion on November 3, 2015. On November 12, 2015, the defendant filed a notice of appeal.

The defendant raises the following claims in her "Statement of Errors Complained of on Appeal" ("Statement"):

"1.	The weight of the evidence was against Defendant's convictions for Aggravated Indecent Assault of a Child, Unlawful Contact with a Minor, and Corruption of Minors, because the DNA evidence excluded Defendant as a suspect.

2.	The evidence is insufficient to support Defendant's conviction for Aggravated Indecent Assault of a Child, Unlawful Contact with a Minor, and Corruption of Minors, because the DNA evidence excluded Defendant as a suspect."

Statement at ¶¶ 1-2.


II.	FACTS

On February 18, 2013, Police Officer Arnaldo Santos responded to a call at 416 North Grove Street in the city and county of Philadelphia, PA. Notes of Testimony ("N.T."), Apr. 15, 2015 Vol. III at pp. 20-22. Officer Santos arrived at the scene and met with the complainant's mother who was very upset. *Id.* 23. The complainant's mother told Officer Santos that she picked the complainant up at the complainant's grandmother's house. *Id.* at 24. According to the complainant, she was touched in her private area. *Id.* On the way home from her grandmother's house, the complainant urinated on herself. *Id.* Her mother saw blood on the complainant's underwear and called the police. *Id.* The complainant's mother turned the underwear over to the officer. *Id.* at 25. When they arrived at the hospital, the officer gave the underwear to the detectives. *Id.*

The complainant was three years old at the time of the incident. *Id.* at 43. The complainant testified that on the day of the incident she was downstairs laying on the couch with the

2

defendant. *Id.* at 43-44. The defendant touched her with her nails between her legs, an area the complainant refers to as her "coochie" or "coo-coo." *Id.* at 45. The complainant also said that she saw the defendant's butt. *Id.* at 47-48.

The complainant's mother testified that she picked her daughter up from her mother's house. *Id.* at 58. Her mother lives there along with the defendant, her girlfriend of about eleven years. *Id.* at 59. When she arrived at her mother's house, she notice that her daughter was not her usual self. *Id.* at 63. Typically, the complainant is very happy to see her mother but she noticed that the complainant was acting differently. *Id.* The complainant told her mother that the defendant "hurt my coo-coo." *Id.* at 64. The complainant then repeated that the defendant "put her finger in my coo-coo." *Id.* At first, the complainant's mother and grandmother did not believe her. *Id.* On the way home, she asked the complainant about what she said at the house. *Id.* at 71. The complainant told her the defendant "touched my coo-coo." *Id.* at 72. The complainant told her the defendant laid her back, put her finger in her vagina, and put her boobs in her face. *Id.* The complainant also urinated on herself on the way home. *Id.* When her mother changed her pants, she saw blood. *Id.* at 73. She then called her mother and told her that the defendant really must have touched the complainant and then she called the police. *Id.* at 73-74.

The complainant was taken by an ambulance to the emergency room at the Children's Hospital of Philadelphia ("CHOP"), where she was examined by Dr. Mercedes Blackstone. *Id.* at 117. The complainant was admitted to the hospital because she had an acuity score of two from a scale of one to five. *Id.* at 119. The complainant received a full examination. *Id.* at 123. Dr. Blackstone found a very small amount of blood in the area of the posterior forcia, which is the interior part of the vagina. *Id.* at 123-124. Also, a nurse practitioner documented a small amount of bleeding with urination. *Id.* at 124.

3

A DNA analysis was performed by Lisette Vega, a forensic science expert from the Philadelphia Police Department Criminalistics Unit, DNA laboratory. *Id.* at 99-100. Ms. Vega analyzed a swab from inside the complainant's crotch, a vulvar swab, an oral swab, a perineal swab, and a reference blood sample from the complainant as well as a reference blood sample from the defendant. *Id.* at 102-103. A touch DNA sample from inside of the complainant's crotch matched the complainant and an unknown individual. *Id.* at 106. The defendant was excluded as a contributor. *Id.* The unknown individual was a female. *Id.* at 107. The other swabs from inside the crotch, the vulvar swab, and the oral swab matched the complainant. *Id.* However, Ms. Vega testified that it is possible that if the complainant wiped herself she may have removed all or some of the DNA from the area. *Id.* at 108.

## III.   DISCUSSION

### A. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence presented at trial as to all charges. In reviewing a claim of insufficient evidence, the standard of review is well settled in Pennsylvania:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgement for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing

4

> upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 886 A.2d 689, 704 (Pa. Super. 2005), *appeal denied*, 897 A.2d 452 (Pa. 2006) (citations omitted).

The defendant asserts that the evidence was insufficient to support her convictions because the DNA evidence excluded the defendant as a match. Although the evidence excluded the defendant as a contributor, the results did not exonerate her. At the defendant's trial, the jury heard testimony from numerous witnesses including, Officer Santos, the complainant, Attilah Wearing, Detective Gonzalez, forensic science expert Lisette Vega, Dr. Blackstone, Detective Enriquez, Melanie Wearing, and Latasha Robinson.

It is well-established that even the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses. *Commonwealth v. Davis*, 650 A.2d 452 (Pa. Super. 1994) *aff'd on other grounds*, 674 A.2d 214 (1996). The fact finder is entitled to believe all, part, or none of the evidence adduced at trial. *Commonwealth v. Wall*, 953 A.2d 581, 584 (Pa. Super. 2008) (citing *Commonwealth v. Price*, 606 A.2d 618, 685 (Pa. Super. 1992)). Where a defendant argues that physical evidence is inconsistent with a victim's testimony, but the evidence does not necessarily exculpate him, the fact-finder may entertain a defendant's alternative theory and reasonably reject it. *Id.*

Forensic science expert Lisette Vega offered a potential explanation for why the DNA did not match the defendant's DNA, i.e. that all or some of the DNA may have been removed from the area by the complainant wiping herself. N.T. Apr. 15, 2015 Vol. III at p. 108. It was within the province of the jury to decide whether the failure to detect the defendant's DNA was more compelling than the victim's testimony. *Commonwealth v. Moto*, 23 A.3d 989, 997 (Pa. 2011). The jury was free to find that the results of the DNA were not determinative in light of the other

5

evidence implicating the defendant and the other possible explanations for the failure to detect the defendant's DNA.

Aggravated Indecent Assault of a Child (F1)

To prove aggravated indecent assault of a child, the evidence must show that the defendant penetrated, however slight, the genitals or anus of a complainant (who is less than 13 years of age) with a part of the person's body for any purpose other than a good faith medical, hygienic, or law enforcement procedure purpose. 18 Pa.C.S. § 3125(b). The Commonwealth satisfied this evidentiary requirement through the complainant's testimony that the defendant's finger penetrated her vagina. In *Commonwealth v. Filer*, 846 A.2d 139, 141 (Pa. Super. 2004), the victim testified that the defendant put one hand down her pants and inserted his finger into her vagina. Although the defendant claimed the victim's testimony was inconsistent, the court found the evidence sufficient to sustain the conviction for aggravated indecent assault. *Id.*

Here, the complainant testified that while laying on a couch, the defendant touched her with her nails between her legs, in an area the complainant refers to as her "coochie" or "coo-coo." The complainant told her mother that the defendant "hurt my coo-coo" and put her finger in my "coo-coo." A small amount of blood was in the interior part of the complainant's vagina. She also had a small amount of bleeding with urination following the incident. Therefore, the evidence was more than sufficient for the jury to find the defendant guilty of aggravated indecent assault of a child.

Corruption of a Minor (M1)

In order to convict a person of corruption of a minor, the Commonwealth must prove beyond a reasonable doubt a person age 18 or older, by any act corrupts or tends to corrupt the morals of any minor less than 18 years old. 18 Pa.C.S. § 6301(a)(1)(i). Corruption of a minor can involve

6

a virtually unlimited variety of types of conduct involving a child. In order to determine whether conduct might corrupt the morals of a minor, common sense of the community and a general sense of decency, propriety, and morality which most people entertain will suffice in applying this section to the facts of the case. *Commonwealth v. Decker*, 698 A.2d 99, 101 (Pa. Super. 1997). The Superior Court has held that evidence was sufficient to support conviction for corruption of a minor where the record established that defendant sexually abused his five-year-old step-granddaughter. *Commonwealth v. Bishop*, 742 A.2d 178 (Pa. Super. 1999). As discussed above, the record clearly established that the defendant had sexual contact with the complainant in her grandmother's home when the defendant put her fingers between the complainant's legs and touched her "coochie." Further, the defendant was over the age of eighteen and the complainant was under the age of eighteen at the time of the incident.[6]

Unlawful Contact with a Minor (F1)

Finally, the defendant was convicted of unlawful contact with a minor. To sustain a conviction for unlawful contact with a minor as charged in this case, the Commonwealth must prove beyond a reasonable doubt that the defendant intentionally contacted a minor, for the purpose of engaging in activity prohibited under Chapter 31 (relating to sexual offenses), and that either the defendant or the person being contacted was within the Commonwealth. 18 Pa.C.S. § 6318(a)(1). "Contact" is defined as direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system. 18 Pa.C.S. § 6318(c). A "minor" is an individual under

---

[6] The parties stipulated that the defendant's date of birth is January 5, 1974. N.T. Apr. 15, 2015 Vol. III at p.147.

18 years of age. 18 Pa.C.S. § 6318(c). As discussed above, the defendant had sexual contact with the complainant for the purpose of committing aggravated indecent assault of a child and corruption of a minor. Thus, sufficient evidence was presented at trial to sustain a conviction for unlawful contact with a minor.

In consideration of the complainant's testimony, the testimony of the complainant's mother, the CHOP emergency room doctor, and the testimony of the officers, the evidence supports the jury's convictions of the defendant. In viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, the evidence was sufficient to enable the jury to find, beyond a reasonable doubt, that defendant was guilty of aggravated indecent assault of a child, corruption of a minor, and unlawful contact with a minor.

## B. Weight of the Evidence

The defendant also challenges the weight of the evidence. When evaluating the weight of the evidence, the standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgement for that of the finder of fact. Thus [the Superior Court] may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003).

On appeal the defendant asserts that the verdict is against the weight of the evidence because the DNA evidence excluded the defendant as a suspect.[7] As discussed at length above, the jury heard from numerous witnesses and was able to assess the credibility of the witnesses. Although

---

[7] The defendant preserved this claim in her post-sentence motion. Pa. R. Crim. P. 607.

8

the defendant's testimony contradicted the testimony of the complainant and the DNA did not match the defendant, the jury had the full opportunity to evaluate the substance of the testimony to make the relevant factual determinations. Additionally, "where an appellant argues that physical evidence is 'inconsistent' with a victim's testimony, but that evidence does not necessarily exculpate him, the fact-finder may entertain a defendant's alternative theory and reasonably reject it. In such instances, we will not substitute the fact-finder's judgment with our own." *Wall*, 953 A.2d at p. 586; *See also Commonwealth v. Burns*, 988 A.2d 684, 695 (Pa. Super. 2009) (the exclusion of a defendant as a DNA contributor does not mandate a finding of not guilty). In *Wall* the court rejected the defendant's weight of the evidence claim where DNA testing excluded Wall's sperm as a match. *Id.* The court concluded while DNA evidence may have been an alternative theory it did not require the conclusion that Wall did not rape the victim. *Id.*

Here, the jury heard testimony from the complainant who testified credibly that the defendant touched her "coo-coo" as well as the complainant's mother who testified that she saw blood between the complainant's legs after she urinated. The jury also heard testimony that the DNA evidence did not match that of the defendant. However, the Commonwealth's laboratory expert presented a reasonable explanation that the DNA could have been removed when the complainant wiped herself after urinating. The jury had the full opportunity to hear the defendant's alternative theory and assess its credibility, and chose to reject it. Therefore, this court finds no merit in the defendant's challenge to the weight of the evidence presented at trial as it does not "shock one's sense of justice." *Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. 2007).

9

## IV.   CONCLUSION

For all of the reasons herein, the defendant's convictions should be affirmed.

BY THE COURT

Woelpper Donna, J.



IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0004971-2013 |
| | : | |
| v. | : | 3433 EDA 2015 |
| | : | |
| LATASHA ROBINSON | : | |

## PROOF OF SERVICE

I hereby certify that I am this 20th day of April, 2016, serving the foregoing Opinion on the persons indicated below, by first-class & inter-office mail:

Zachary Shaffer, Esq.
Land Title Building
100 S. Broad Street, Suite 1216
Philadelphia, PA 19110

Hugh Burns, ADA
Chief, Appeals Unit
District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107

Richard P. Santosusso, Esq.
Law Clerk to Hon. Donna M. Woelpper