J-A05007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: H.C., A MINOR | : IN THE SUPERIOR COURT OF |
| | :      PENNSYLVANIA |
| | : |
| APPEAL OF: H.H., MOTHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 1243 MDA 2021 |

Appeal from the Order Entered August 31, 2021
In the Court of Common Pleas of Susquehanna County Orphans' Court at
No(s): Adopt-019-2019

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:       **FILED: MARCH 18, 2022**

Appellant, H.H., ("Mother") appeals from the August 31, 2021 order terminating her parental rights pursuant to Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938 to her dependent child, H.C., who was born in December 2010. We remand this case in order that the trial court may prepare a comprehensive opinion in accordance with this memorandum.

The record demonstrates the following procedural history.[1] On August 21, 2019, Susquehanna County Services for Children and Youth ("SCSCY") filed a petition for involuntary termination of Mother's parental rights to H.C. ("termination petition") pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2),

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The trial court's August 31, 2021 amended order terminating Mother's parental rights does not provide a detailed procedural and factual history of this case, as discussed more fully *infra*.

(a)(5), and (b).[2]   On September 28, 2020, Mother executed a consent to adoption in which she agreed to the voluntary termination of her parental rights to, and adoption of, H.C.  Petition to Confirm Consent, 11/5/20, at Exhibit A ("Consent to Adoption").  SCSCY petitioned the trial court to confirm Mother's consent to voluntary termination of her parental rights and adoption on November 5, 2020.  On January 15, 2021, the trial court found that Mother wished to revoke her consent to voluntary termination of parental rights and adoption, and the trial court entered an order granting Mother's motion to revoke her consent and ordered that the matter proceed with an involuntary termination hearing.  Trial Court Order, 1/15/21.

The trial court conducted an involuntary termination hearing virtually *via* advanced communication technology due to the COVID-19 global pandemic on March 1, 2021, March 23, 2021, June 30, 2021, and August 13, 2021, and conducted a person-to-person in-camera review of the child on July 1, 2021, at which only the child and guardian *ad litem* were present by stipulation of the parties.  On August 23, 2021, the trial court entered an order terminating Mother's parental rights to H.C.  Trial Court Order, 8/23/21.  On August 31, 2021, the trial court entered an amended order terminating

---

[2] A review of the certified record reveals that the parental rights of J.C., the child's biological father, ("Father") were involuntarily terminated by trial court order dated September 30, 2020, and entered October 5, 2020.  Trial Court Order, 10/5/20.  Father did not appeal the order terminating his parental rights and he is not a party to this appeal.

Mother's parental rights to H.C. that included a correction as to Father's last name.[3] Trial Court Amended Order, 8/31/21. This appeal followed.

_____

[3] On September 17, 2021, Mother appealed from the August 23, 2021 order terminating her parental rights to H.C., and this Court docketed the appeal at 1242 MDA 2021. That same day, Mother also appealed from the August 31, 2021 amended order terminating her parental rights to H.C., and this Court docketed that appeal at 1243 MDA 2021.

In an October 25, 2021 *per curiam* order, this Court directed Mother to show cause why her appeal docketed at 1242 MDA 2021 should not be quashed for lack of jurisdiction in light of the amended order entered on August 31, 2021. Mother filed a response with this Court on November 4, 2021, stating that she filed a notice of appeal from both trial court orders terminating her parental rights in order to preserve her appellate rights. Mother requested that this Court consolidate the two appeals. In a November 8, 2021 *per curiam* order, this Court quashed Mother's appeal docketed with this Court at 1242 MDA 2021 on the basis "it appears that the August 2[3], 2021 [order] is a legal nullity" in light of the August 31, 2021 amended order.

Section 5505 of the Pennsylvania Judicial Code states that, "[e]xcept as otherwise provided or prescribed by law, a court **upon notice to the parties** may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505 (emphasis added). Therefore, the trial court in the case *sub judice* was permitted pursuant to Section 5505 of the Judicial Code to modify its August 23, 2021 order terminating Mother's parental rights to H.C. but **only after providing notice to the parties**. *See Commonwealth v. Renninger*, ___ A.3d ___, 2022 WL 16581, at *13 (Pa. Super. 2022 Filed January 3, 2022) (*en banc*) (slip opinion). Here, the certified record contains no such notice. However, unlike the circumstances in *Renninger*, *supra*, where the appellant objected to the trial court's failure to provide notice and the modified order included a substantive change to the original order, the parties in the case *sub judice* did not raise an objection to the trial court's failure to provide notice to the parties prior to entering the August 31, 2021 amended order. Moreover, a review of the August 31, 2021 amended order demonstrates that the only modification was to correct a typographical error pertaining to Father's last name. As such, we find that Mother's appeal properly lies from the August 31, 2021 order terminating her parental rights to H.C. despite the trial court's failure to

Mother raises the following issues for our review:

[1.] Did the trial court err [or] abuse its discretion in terminating the parental rights of [Mother], where [SCSCY] failed to present sufficient evidence to satisfy the elements of 23 Pa.C.S.A. § 2511(a)(2) or [another] section not specifically mentioned in the trial court's [August 31, 2021] amended order?

[2.] Did the trial court err or abuse its discretion in terminat[ing] the parental rights of [Mother], where [SCSCY] failed to present sufficient evidence to establish that termination was in the best interest of H.C., [pursuant to 23 Pa.C.S.A. § 2511(b)]?

[3.] Whether the trial court erred as a matter of law [or] manifestly abused its discretion by not sufficiently stating with specificity [and] reference to the record its basis for terminating [Mother's] parental rights [pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b)]?

[4.] Whether the trial court erred as a matter of law [or] manifestly abused its discretion in determining whether [SCSCY] presented sufficient evidence to satisfy the grounds for termination of [Mother's] parental rights under 23 Pa.C.S.A. § 2511(a)(2) or [another] section not specifically mentioned in the trial court's [August 31, 2021] amended order?

[5.] Even if [this Court] determines [SCSCY] presented sufficient evidence to satisfy the grounds for termination of [Mother's] parental rights under 23 Pa.C.S.A. § 2511(a)(2) of the Adoption Act or [another] section not specifically mentioned in the trial court's [August 31, 2021 amended] order, [whether] the trial court nevertheless erred as a matter of law [or] manifestly abused its discretion in determining

---

provide notice pursuant to Section 5505. **See Commonwealth v. Garzone**, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010) (stating that an appeal properly lies from an order modified pursuant to Section 5505), *aff'd*, 34 A.3d 67 (Pa. 2012).

> termination of [Mother's] parental rights [was] in the best interests of [H.C., pursuant to 23 Pa.C.S.A. § 2511(b)]?

Mother's Brief at 7-8 (extraneous capitalization omitted).[4]

In matters involving involuntary termination of parental rights, our standard of review is well-settled.

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** "A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will." ***Id.*** The trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id.*** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning

---

[4] The fourth and fifth issues raised by Mother on appeal are duplicative of the first and second issues raised by Mother, respectively. Moreover, a review of the argument section of counsel's appellate brief demonstrates that there is only one argument section that addresses all five issues. Pennsylvania Rule of Appellate Procedure 2119(a) directs that the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part - in distinctive type or in type distinctively displayed - the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." ***See*** Mother's Brief at 19-24 (setting forth a single argument section entitled "The trial court erred in finding that [SCSCY] presented clear and convincing evidence that involuntary termination of Mother's parental rights was appropriate under [Section] 2511(a) and would best meet the developmental, physical and emotional needs and welfare of [H.C.] under [Section] 2511(b) and erred by not specifically stating with specificity [and] reference to the record its basis for termination of Mother's parental rights" (extraneous capitalization omitted; spelling errors corrected)); ***see also*** Pa.R.A.P. 2119(a).

multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (original brackets omitted). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, which requires a bifurcated analysis[5] of the grounds for termination followed by an assessment of the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the [trial] court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). **Only if the [trial] court determines that the parent's conduct warrants termination of his or her parental rights does the [trial] court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.** One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between

---

[5] An analysis is a detailed and comprehensive statement by the trial court that, in the context of an order terminating parental rights, sets forth the applicable law, *i.e.*, Section 2511, and explains the trial court's rationale underpinning a decision to terminate, or not terminate, an individual's parental rights by detailing, with citation and reference to the record, its application of the law to the facts, as determined by the trial court.

parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*B.J.Z.*, 207 A.3d at 921 (citation omitted; emphasis added). We have defined clear and convincing evidence as that which is "so clear, direct, weighty, and convincing as to enable the trier[-]of[-]fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Z.P.*, 994 A.2d 1108, 1116 (Pa. Super. 2010) (citation omitted). A child has a right to a stable, safe, and healthy environment in which to grow, and the "child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re I.J.*, 972 A.2d 5, 9 (Pa. Super. 2009).

Here, without analysis, the trial court terminated Mother's parental rights to H.C. pursuant to Section 2511(a)(2). Trial Court Amended Order, 8/31/21, at ¶13 (stating, "[p]ursuant to 23 Pa.C.S.A. § 2511(a)(2), grounds exist for involuntary termination of [] Mother's [parental] rights").

Sections 2511(a)(2) provides as follows:

### § 2511. Grounds for involuntary termination

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his[, or her,] physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

> *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal[,] as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015).

> Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control[,] or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.

*Z.P.*, 994 A.2d at 1117 (citation omitted). "[W]hen a parent has demonstrated a continued inability to conduct his[, or her] life in a fashion that would provide a safe environment for a child, whether that child is living with the parent or not, and the behavior of the parent is irremediable as supported by clear and competent evidence, the termination of parental rights

is justified." *Id.* at 1118 (citation omitted). "A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id.* (citation and original quotation marks omitted).

Section 2511, in "permitting the termination of parental rights[,] outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have his [or her] parental rights terminated." *Id.* (citation and original quotation marks omitted).

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his[, or her,] ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with the child's physical and emotional needs.

*Id.* at 1119 (citation and original brackets omitted).

Once the trial court determines that involuntary termination of parental rights is warranted under Section 2511(a), **the trial court is required to engage in an analysis pursuant to Section 2511(b) to determine whether termination is in the best interests of the child.** Section 2511(b) states,

## § 2511. Grounds for involuntary termination

. . .

**(b)** **Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(b). The analysis under Section 2511(b)

focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [Section] 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [Section] 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of J.N.M.*, 177 A.3d 937, 943-944 (Pa. Super. 2018) (citation and original brackets omitted), *appeal denied*, 183 A.3d 979 (Pa. 2018). A

trial court may rely on a caseworker or social worker to determine the status of and nature of a parent-child bond. ***J.N.M.***, 177 A.3d at 944 (holding, a trial court "is not required by statute or precedent to order a formal bonding evaluation be performed by an expert" (citation omitted)); ***see also In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005) (holding, a trial court must "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond" (citation omitted)).

In terminating Mother's parental rights to H.C., the trial court set forth the following 18 findings of fact in its August 31, 2021 amended order:

**FINDINGS OF FACT**

1.   The subject child is [H.C.], [who was born in] December [] 2010.

2.   The petitioner is [SCSCY] with an address of 75 Public Avenue, Montrose, Susquehanna County, Pennsylvania, 18801.

3.   [Mother was born in] July [] 1991 and [resides in] Lackawanna County, Pennsylvania[.]

4.   [Father was born in] May [] 1986, and [his] address is unknown.

5.   [] Father's parental rights [to H.C.] were terminated [by trial court order dated] September 30, 2020[, and entered October 5, 2020].

6.   The minor child was found dependent [by the trial] court on August 11, 2016.

7.   The minor [child] has been in placement since [August 2016,] and has expressed that she would like to be adopted by her pre-adoptive foster parents.

- 11 -

8.    The minor has had six [] previous placements.

9.    [] Mother has not shown significant progress towards alleviating the circumstances that necessitated placement.

10.   [] Mother has not shown that she is able to maintain stable, consistent housing.

11.   [] Mother has not maintained any ongoing [or] significant contact with the child since placement.

12.   [] Mother has relocated to Missouri.

13.   Pursuant to 23 Pa.C.S.A. § 2511(a)(2), grounds exist for involuntary termination of [] Mother's rights in that the repeated and continuous inability, neglect[,] and refusal of [] Mother to perform her parental duties has caused the child to be without essential parental care, control[,] or subsistence necessary for her physical and mental well-being, and the conditions and causes of the neglect and refusal cannot and will not be remedied by [] Mother.

14.   The minor child has been removed from the care of [Mother] by the [trial] court or under a voluntary agreement with [SCSCY] for a period of at-least six [] months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonably period of time[,] and termination of the parental rights would best serve the needs and welfare of the minor child.

15.   [] Mother has not [] perform[ed] any parental duties for the minor child for a period in excess of six [] months.

16.   [SCSCY] desires to terminate the parental rights of [] Mother so that the minor child can be adopted by suitable persons, previously identified in the dependency matter.

17.   [SCSCY] is willing and able to take continued custody of the minor child until adoption can be finalized.

18.   To the best of [SCSCY's] knowledge, [Mother] is not entitled to the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended 50 U.S.C.A. § 501, *et seq*.

Trial Court Amended Order, 8/31/21, at 1-3 (extraneous capitalization omitted). Without an analysis, including a summation of credible testimony provided during the course of the termination hearing or reference to the certified record or other evidence, the trial court summarily terminated Mother's parental rights to H.C. in a one sentence statement as follows:

> Mother has, through her course of conduct continuing for a period of over six [] months, failed to perform her parental duties and has caused the subject child to be without essential parental care, control[,] or subsistence necessary for the subject child's physical and mental well-being.

*Id.* at 3.

"A parent's right to make decisions concerning the care, custody, and control of his or her children is among the oldest of fundamental rights." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). "[A] decree terminating parental rights is widely regarded as the civil law equivalent to the death penalty, forever obliterating the fundamental legal relationships between parent and child." *Id.* at 362. A decision to terminate parental rights has far-reaching and intentionally irreversible consequences for the parent and the child and, as such, the significant gravity of such a decision should not escape the jurists of this great Commonwealth. Because a child's future hangs in the balance during termination proceedings, trial courts should be ever-mindful to give full attention to the matter, proceed as expeditiously as possible, and provide a comprehensive, thorough analysis explaining its decision to terminate, or not terminate, parental rights, by detailing the

applicable law as it applies to the individual circumstances of the case with reference to the certified record in support thereof. Anything short of such a comprehensive and thorough analysis constitutes an injustice to the child.[6]

Simply put, in the case *sub judice*, the trial court's August 31, 2021 amended order terminating Mother's parental rights to H.C., while it included findings of fact interspersed with statements of law, lacked an analysis, much less a comprehensive and thorough analysis, of the facts of the case as they apply to the law that explains in detail with reference to the certified record the trial court's decision to terminate Mother's parental rights pursuant to Section 2511(a)(2) and (b).[7] We are unable to conduct a meaningful appellate

_____

[6] As our Supreme Court in ***Daniels v. Workers' Compensation Appeal Bd. (Tristate Transport)***, 828 A.2d 1043 (Pa. 2003) explained,

> One of the virtues of the legal profession - and it is a virtue that certainly applies to the judicial decision-making process - is that it depends upon reasoned articulation. Views are oftentimes shaped, molded, and changed in the very process of articulation. In addition, a [trial court's] expression of the basis for a decision may reveal distinct legal error, as in the misapprehension of a governing standard or a material fact.

***Daniels***, 828 A.2d at 1054 n.8.

[7] It may be inferred from the trial court's order terminating Mother's parental rights to H.C. that the trial court found termination of parental rights to be in the best interest of the child, albeit without reference to Section 2511(b).

Section 2511(a)(5) states that "[t]he rights of a parent in regard to a child may be terminated after a petition filed" when

review of the amended order terminating Mother's parental rights to H.C. because the trial court's amended order lacked an analysis with reference to the certified record. *See Commonwealth v. Moto*, 23 A.3d 989, 995-996 (Pa. 2011) (explaining that, while appellate courts presume, absent evidence to the contrary, that a trial court applies the facts in its possession and "carefully consider[s] the **entire** record," what a "trial court **must** do is to explain the rationale for its decision in legal and factual detail sufficient to allow meaningful review" (emphasis in original)); *see also Artzt v. Artzt*, 556 A.2d 409, 410 (Pa. Super. 1989) (stating that, when a comprehensive opinion, which includes a thorough analysis of the record, findings of fact, and conclusions of law, is not filed, remand for filing of such an opinion is

---

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency **for a period of at least six months**, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5) (emphasis added). Although the trial court does not cite to Section 2511(a)(5) as a ground for terminating Mother's parental rights, the trial court does state that "[t]he minor child has been removed from the care of [Mother] by the [trial] court . . . **for a period of at-least six months**[.]" Trial Court Amended Order, 8/31/21, at ¶14 (emphasis added). Due to the lack of comprehensive analysis, it is unclear whether the trial court also found sufficient grounds for termination of Mother's parental rights to H.C. pursuant to Section 2511(a)(5).

mandated), *appeal denied*, 597 A.2d 1115 (Pa. 1991); **Crowther v. Waida**, 414 A.2d 675, 676 (Pa. Super. 1979) (stating that, in order to conduct a meaningful review on appeal, this Court requires a comprehensive opinion reflecting the trial court's thorough analysis of the record and specifying the reasons for its ultimate decision); **Pennsylvania Social Servs. Local 668 v. Pennsylvania Labor Relations Bd.**, 392 A.2d 256, 260 (Pa. 1978) (stating, "In order for review to be meaningful, the [trial court's opinion] must contain statements of the reasons and basis for the decision which are sufficient to demonstrate to the appellate court that the adjudication was not an abuse of discretion. What is sufficient will vary from case to case."). Therefore, we are constrained to remand this matter in order that the trial court may prepare a comprehensive Rule 1925(a) opinion analyzing the applicable law and the facts of the case *sub judice*. The trial court shall file its comprehensive opinion within 30 days of this decision. Thereafter, Mother shall have 14 days in which to file a response. Upon the filing of Mother's response, if any, SCSCY and the guardian *ad litem* for H.C. shall have 14 days in which to file a response. The certified record shall be returned to this Court no later than 60 days from the date of this decision.

Case remanded. Jurisdiction retained.